**Mark TARKA, Plaintiff–Appellant,**

v.

**G. Charles FRANKLIN, et al., Defendants–Appellees.**

No. 89–1161
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 29, 1989.

Mark Tarka, Austin, Tex., pro se.

---

Esther Hajdar, Asst. Atty. Gen., Austin, Tex., for defendant-appellee.

Before GEE, DAVIS and JONES, Circuit Judges.

PER CURIAM:

 The major issue in this case is whether appellant was a "student" at the University of Texas at Austin for purposes of gaining access to his admission file there in accordance with the Family Educational Rights & Privacy Act of 1974 ("FERPA") 20 U.S.C. § 1232g. We agree with the district court's conclusion that a person whose application to the Graduate School of the University of Texas has been rejected, but who nevertheless audited some classes at the University is not a "student" as defined by FERPA, 20 U.S.C. § 1232g(a)(6). We adopt and reproduce below the pertinent portions of the district court's opinion dealing with this issue:[1]

> The facts which give rise to the filing of this lawsuit occurred in the Fall of 1986. At that time, Plaintiff submitted an application for admission to the Graduate School of the University of Texas at Austin, Department of Chemistry. As a part of his application, Plaintiff submitted three letters of recommendation which he solicited from faculty members of the chemistry department at South Dakota State University. On September 2, 1986, Plaintiff was informed that he was denied admission. This denial of admission compelled the Plaintiff to commence efforts to obtain access to his entire application file and the letters of recommendation which Plaintiff, with the benefit of hindsight, never should have solicited nor submitted with his application.
>
> The Plaintiff began his journey by sending written inquiries directly to University administrators. He continued his quest with the filing and prosecution of a lawsuit through the entire state court system. He eventually filed a Complaint in federal court which led to the compilation of a voluminous summary judgment record before this Court. While the Court is impressed with Plaintiff's perseverance, the Court must adhere to applicable principles of law and reject Plaintiff's efforts to determine the contents of the recommendation letters.
>
> As stated earlier, Plaintiff contacted various University officials requesting access to his application file. He was initially denied access to his file, but subsequently received an edited copy of the file in accordance with the Texas Open Records Act, TEX.REV.CIV.STAT.ANN. 6252–17a, ("TORA"). Plaintiff, being unsatisfied with this result, then filed suit seeking access and monetary compensation in the 250th Judicial District Court of Travis County, Texas, against at least four of the University officials named in this federal action. The state action was dismissed on jurisdictional grounds relating to the doctrine of official immunity. Plaintiff appealed his case to the Texas Supreme Court without success.
>
> After being rejected in state court, Plaintiff commenced the present litigation alleging causes of action under:
>
> (1) the Family Education Rights & Privacy Act of 1974 ("FERPA"), codified at 20 U.S.C. § 1232g;
>
> (2) the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983;
>
> (3) the TORA;
>
> (4) the Fifth and Fourteenth Amendments of the United States Constitution; and
>
> (5) the Texas Constitution, Art. 1, sec. 19.

. . . . .

1. Because we reject Tarka's right of access to the recommendation letters founded on FERPA, it follows that the defendants have not shed their qualified immunity from suit for denying that access. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We affirm the district court's discretionary decision to dismiss Tarka's state law claims. We do not consider his "due process" argument concerning the recommendation letters, for Tarka did not brief or argue that issue in our court.

Under the Federal Rules of Procedure, the Court may only grant summary judgment if, when viewing the evidence most favorably to the nonmoving party and indulging all reasonable inferences in favor of that party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett* [477 U.S. 317], 106 S.Ct. 2548, 2552–53 [91 L.Ed.2d 265] (1986); *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir.1984). As stated by the Supreme Court in Celotex:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* In order to determine which factual issues are material, the Court must first examine the substantive law that governs the case, and to determine if an issue of material fact is genuine, the Court must then decide whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, [477 U.S. 242], 106 S.Ct. 2505, 2510 [, 91 L.Ed.2d 202] (1986).

### III. ANALYSIS

#### A. *FERPA Rights*

In Plaintiff's Second Amended Complaint ("Complaint"), Plaintiff alleges that the actions of the Defendants in denying access to Plaintiff's application constitute a

violation of FERPA. FERPA was designed primarily to regulate the release of student records. A student's or parent's consent is required where personally identifiable information from the educational records of a student is to be disclosed. The Secretary of Education is empowered to enforce the various provisions of FERPA. 20 U.S.C. § 1232g(f).[2] An educational agency or institution that unlawfully releases a student's record may lose federal funding. 20 U.S.C. § 1232g(b)(1). This is the only express remedy provided in the statute. The Fifth Circuit has found that FERPA does not explicitly provide for a private cause of action and that its legislative history does not indicate that the drafters of the legislation intended for there to be one. *Klein Independent School District v. Mattox*, 830 F.2d 576, 579 (5th Cir.1987), *cert. denied*, [485 U.S. 1008,] 108 S.Ct. 1473, [99 L.Ed.2d 702] (1988). Other circuits have found more definitively that no private cause of action, either explicitly or implicitly, was created or intended. *See Fay v. South Colonie Century School District*, 802 F.2d 21, 33 (2d Cir. 1986); *Girardier v. Webster College*, 563 F.2d 1267, 1277 (8th Cir.1977) (both cases cited with approval in *Klein*). This Court finds therefore that a private cause of action does not exist under FERPA.

#### B. *42 U.S.C. § 1983*

In order for Plaintiff to recover on his claims arising under 42 U.S.C. § 1983, he must establish two vital elements: (1) that he has been deprived of a right "secured by the Constitution and the laws" of the United States; and (2) that the persons depriving him of this right acted "under color of any statute" of the State of Texas. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155 [, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185] (1978); *Roberts v. Louisiana Downs, Inc.*, 742 F.2d 221, 223 (5th Cir.1984).

---

**2.** In this case, the record indicates that the Department of Education informed Plaintiff that FERPA did not entitle him to have access to the requested materials and that it would thus be unable to intercede on his behalf. *See* Plaintiff's Second Amended Complaint, Exhibit P–46(b), paragraph two.

....

## 2. *FERPA claim*

Plaintiff alleges in his complaint as an alternative basis for a section 1983 violation that Defendants' actions constitute a violation of Plaintiff's rights under FERPA.

. . . . .

Plaintiff also sues these Defendants in their official capacity as administrators, professors, and counsel for the University of Texas. In his motion for partial summary judgment, Plaintiff concedes that there exists no genuine issue of material fact which prevents the Court from deciding by summary judgment whether he falls within the class of individuals entitled to the rights afforded by the FERPA provisions governing this case. In Defendants' Motion for Dismissal and/or Summary Judgment, Defendants also seek a summary judgment determination of Plaintiff's rights under FERPA for purposes of resolving Defendants' liability, if any, under 42 U.S.C. § 1983. The Court therefore shall consider on the basis of the summary judgment record presented on this issue whether as a matter of law Defendants violated section 1983 by depriving Plaintiff of his FERPA rights. In this respect, the parties agree that the primary question is whether Plaintiff was a "student" at the time he was denied access to the letters as that term is defined in FERPA.

FERPA grants parents of students, students over 18 years of age, and students attending an institution of post-secondary education the right to access and review educational records relating to him subject to certain exceptions. *See* 20 U.S.C. § 1232g(a)(1)(A), (a)(2) and (d); *see also* 34 C.F.R. §§ 99.11–.12.

Initially, the University denied Plaintiff access to his files because he had allegedly signed a waiver of his right of access pursuant to 20 U.S.C. § 1232g(a)(1)(B)(iii). Defendants subsequently abandoned this position and instead denied Plaintiff access to his file on the grounds that he was not a "student"

as defined by federal regulations duly promulgated under FERPA by the Secretary of Education.

As stated earlier, the Court must decide whether Plaintiff is a "student" for purposes of FERPA. The statute itself defines "student" with the following statement:

> [T]he term "student" includes any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution.

20 U.S.C. § 1232g(a)(6). Pursuant to the authority granted under subsection (c) of FERPA, the Secretary of Education has adopted regulations for implementing the Act. *See* [34] C.F.R. § 99.1, *et seq.* These regulations further define the term "student" in the following provision:

> 'Student' (a) includes any individual with respect to whom an educational agency or institution maintains education records.
>
> (b) The term does not include an individual who has not been in attendance at an educational agency or institution. A person who has applied for admission to, but has never been in attendance at a component unit of an institution of postsecondary education (such as the various colleges or schools which comprise a university), even if that individual is or has been in attendance at another component unit of that institution of postsecondary education, is not considered to be a student with respect to the component to which an application for admission has been made.

34 C.F.R. § 99.3. "Attendance" at an agency or institution includes, but is not limited to: (a) attendance in person and by correspondence, and (b) the period during which a person is working under a work-study program. *Id.*

The legislative history of FERPA, which is also known as the Buckley/Pell

Amendment, sheds further light on the meaning of the term "student" and on a "student's" right to see and challenge letters of recommendation. 120 CONG. REC. 539862, *Joint Statement in Explanation of Buckley/Pell Amendment* (Dec. 13, 1974). That provision specifically stated that:

> With regard to letters of recommendation for a student in an institution of postsecondary education, two further clarifications are included. The use of confidential recommendations is limited solely to the purpose for which they were specifically intended. Such recommendations should not become a party of the student's on-going file and serve as a basis for continued official decision-making for purposes other than for which such letters were originally submitted. Second, the "student" to whom the right of access belongs is defined as any person concerning whom the educational agency maintains education records of personal information, but does not include anyone who has not been in attendance at such agency or institution. This means that the rejected applicant for admission is not given the right under the Buckley Amendment to see and challenge his letters of recommendation, nor does the amendment give him the right to challenge the institution's decision not to admit him. Such a right accrues only to the individual who actually attends the institution. For the purpose of this definition, a student who is only auditing a course, but on whom the institution maintains a personal file, would be included in the Amendment's coverage.

*Id.*, 120 CONG.REC. at 39863, col. 2, ¶ 1. Plaintiff's claim for relief under section 1983 is mostly founded upon the language regarding auditing students contained in the above-quoted passage. The record in this case indicates that Plaintiff had audited some courses offered at the University during the following semesters: Fall, 1986; Spring, Summer, and Fall, 1987; and, Spring and Summer, 1988. In addition to certain math and language courses, Plaintiff had obtained permission from the University to audit a graduate chemistry course, identified as CH391, *Advanced Topics in Organic Chemistry*, during each semester since the Spring semester of 1987. In the Fall semester of 1987, Plaintiff audited another graduate chemistry course, identified as CH381M, *Advanced Analytical Chemistry*. Despite having audited these courses, Plaintiff has never been admitted to or formally enrolled in the Graduate School of the University of Texas. Moreover, in the 1988 Spring Semester, Plaintiff did enroll as an undergraduate "Degree Holder but Nondegree Seeker" in the College of Natural Sciences. Plaintiff attempted to enroll in CH391 but subsequently withdrew in February 1988 upon the University's instructions since he did not have graduate standing, a prerequisite for enrollment in a course offered by the Graduate School. Because Plaintiff audited these courses, he contends that he was a "student" in "attendance" for purposes of FERPA since its legislative history indicates that "a student who is only auditing a course, ..., would be included in [FERPA's] coverage." 120 CONG.REC. at 39863, col. 2, ¶ 1. Defendants have adopted a different interpretation of FERPA, its legislative history and its implementing regulations as they relate to the rights of an auditing student on the basis of advisory letters solicited from the Director of the Student and Family Education Rights and Privacy Office. This office is located within the United States Department of Education, the agency which Congress authorized to implement and enforce FERPA. The Court, after reviewing FERPA, its legislative history and the pertinent regulations, as well as case law interpreting FERPA, finds that the Defendants' interpretation is consistent with the underlying purpose of FERPA and congressional intent.

The legislative history makes it clear that Congress specifically did not intend in the first place to give rights of access to letters of recommendation to rejected applicants for admission. Congress also

did not intend to give the rejected applicant the right to challenge the school's decision not to admit him. Congress, in effect, did not want a rejected applicant to have the right to access information contained in his application file such as letters of recommendation for the purpose of challenging either the letters or the rejection decision as a whole. The legislative history also indicates, however, that auditing students were entitled to some protection under FERPA. The specific rights afforded to auditing students under FERPA are not expressly enumerated. The Student and Family Education Rights and Privacy Office, in an attempt to resolve this ambiguity, takes a position advocated by the Defendants. Defendants argue that a rejected applicant who is accepted for auditing in the department or school which denied him formal admission may access grades or other information regarding the audited courses but not information regarding the school's rejection decision.

An individual who audits a course is not in the same position as one who has been granted formal admission. The auditing student is granted permission to visit a class but is not granted the rights and obligations accorded a registered and fully-admitted student. An auditing student also cannot receive a grade or participate in classroom discussion of course work. In view of these differences, the Court believes that a rejected applicant who receives permission to audit a course does not have the right to access admission information which is afforded to a student in attendance.

AFFIRMED.