Cathy NORWOOD, Plaintiff,

v.

Lawrence SLAMMONS,
et al., Defendants.

Civ. No. 91–5049.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

May 8, 1991.

N. Doug Norwood, Rogers, Ark., for plaintiff.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### I. *Introduction*

Plaintiff, the wife of the attorney who signed the complaint, initiated this action on April 24, 1991, naming the following individuals as defendants: Lawrence Slammons, Director of Public Safety of the University of Arkansas; Don Schumacher, Judicial Affairs Coordinator; Dan Ferritor, Chancellor of the University of Arkansas at Fayetteville; B. Alan Sugg, President of the University of Arkansas system; and the following members of the Board of Trustees of the University of Arkansas system—James Blair, Carl Willock, M.A. Jackson, W. Sykes Harris, Frank Kumparis, Sandra Ledbetter, H.L. Hembree, III, B.R. Lindsey, L.L. Epley, Jr., and F.W. Oldham, Jr. All defendants are named individually and in their official capacities.

Plaintiff alleges that she has been accepted for admission at the University of Arkansas School of Law, Fayetteville, Arkansas, for the fall semester of 1991. In count one of the complaint plaintiff alleges that the defendants have violated and continue to violate the provisions of 20 U.S.C. § 1232g (1990) *et seq.*, in refusing to release certain requested records. The requested records are certain documents related to the investigation of criminal and non-criminal activity committed by or against students and/or employees of the University of Arkansas, including records of the All University Judicial Board. The records specifically requested are in re-

spect to a highly publicized incident involving Arkansas Razorback basketball players and a 34-year-old Springdale woman and include an audio tape of a hearing in which Razorback basketball team members, Todd Day, Elmer Martin, Roosevelt Wallace, and Darrell Hawkins were disciplined by the University for various alleged violations of University rules and/or policy relating to a February 27, 1991, incident in an athletic dormitory involving admitted sexual activity on the part of various males and the woman. Plaintiff alleges that after the hearing in question, Day, Martin, Wallace, and Hawkins signed waivers of their rights under the Family Educational and Rights of Privacy Act (20 U.S.C. § 1232g *et seq.*) (hereafter "FERPA"), thereby allowing defendant, Sugg, to discuss their punishment with the press and media. Plaintiff alleges that, therefore, the records of the "J Board" hearing are now "public records" under the Arkansas Freedom of Information Act of 1967, as amended, Ark.Code Ann. § 25–19–101 (1987) *et seq.* In count one plaintiff requests that this court declare that Arkansas' freedom of information (FOI) law governs the release of the records and mandates that the defendants release and disclose the same upon request.

In count two, plaintiff alleges that the defendants' refusal to release the records violates plaintiff's rights under the First, Fifth and Fourteenth Amendments "in that they hinder (plaintiff's) access to information as a citizen and as a future law student." Plaintiff further asserts that defendants' actions violate her rights under FERPA and her rights under the equal protection clause of the Fourteenth Amendment. Plaintiff requests declaratory and monetary relief, as well as attorney's fees.

In count three plaintiff sets forth a claim under the Arkansas FOI laws and prays for declaratory relief and attorney's fees.

In count four, plaintiff seeks injunctive relief directing the defendants to comply with the Arkansas FOI laws. Plaintiff asserts that she has been harmed by her inability to acquire information concerning campus crime and that she has thus been denied equal protection of the laws and equal police protection.

Because counts one and three set forth only claims arising under state law, federal jurisdiction of this cause must exist, if at all, by virtue of the claims set forth in counts two and four. Inasmuch as none of the parties contend that diversity jurisdiction is present under 28 U.S.C. § 1332, only if jurisdiction of these counts exists under 28 U.S.C. §§ 1331 or 1343 may any of plaintiff's claims be addressed by this court.

Because the true jurisdictional basis of plaintiff's complaint is not readily apparent, the court requested, by letter dated April 25, 1991, that plaintiff's attorney brief the issue of federal court jurisdiction by the close of business on May 3, 1991, and notified the defendants that they could, if they chose, do likewise. The briefs have been received and reviewed by this court.

 As the court advised the parties, the court requested briefs on this issue because a federal trial or appellate court has the obligation and indeed the duty to carefully consider, even *sua sponte,* whether the pleadings filed justify the exercise of federal jurisdiction over the cause submitted. If the court determines, at any time or at any stage of the proceedings, that federal jurisdiction is lacking, the court is obligated to remand to state court actions improperly removed to federal court or to dismiss actions improperly filed in federal court originally. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (circuit courts on appeal may decide *sua sponte* the presence of federal jurisdiction). *See also Fort v. Ralston Purina Co.,* 452 F.Supp. 241 (E.D.Tenn.1978); *Van Horn v. Western Electric Co.,* 424 F.Supp. 920 (E.D.Mich.1977); *Fischer v. Holiday Inn of Rhinelander, Inc.,* 375 F.Supp. 1351 (W.D.Wis.1973); *Sexton v. Allday,* 221 F.Supp. 169 (E.D.Ark.1963).

 The reason for the rule is obvious. If a federal court were to devote its time and resources to a cause over which it lacked jurisdiction all actions taken by the court would be futile, void *ab initio,* and a complete nullity. Not only does this waste

the resources of the federal judiciary, but also renders nugatory all efforts, time, and money expended by the litigants and their attorneys. Any party may contest federal jurisdiction at any time, even the party invoking the court's power in the first instance and even after judgment is rendered against that party. *See American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Even a non-party witness can challenge the court's lack of federal jurisdiction in response to orders of a federal court. *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988).

What this means to a layman is that the plaintiff, Cathy Norwood, could conceivably file an action in this court, litigate the issues raised at great expense of time and money for all of the parties, perhaps lose, and then argue that this court lacked jurisdiction of the subject matter in the first place, thereby enabling her to file the identical case in state court and relitigate the entire case all over again. Or, conversely, plaintiff could prevail in this case and defendants could then argue that this court lacked jurisdiction initially, forcing the plaintiff to relitigate the whole case anew in state court. Obviously, in order to avoid such an enormous waste of judicial, legal, and financial resources, this court must assure itself that federal jurisdiction is present before it proceeds with this matter any further. Otherwise this court would potentially be wasting the time of the litigants and the lawyers, as well as the public's money.

## II. *Discussion*

Plaintiff alleges that the jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 "in that Count(s) 2 and 4 are filed under 42 U.S.C. § 1983, and count 1 seeks a declaratory judgment on a federal statute." Initially, the court would point out that the jurisdictional statute for actions alleging violations of 42 U.S.C. § 1983 is 28 U.S.C. § 1343 rather than § 1331, which is the general federal question jurisdictional statute. The court will first examine the

adequacy of the jurisdictional bases of count one under § 1331.

### (a) *Count One*

The pertinent allegations of count one are that the University of Arkansas and its officials are subject to the provisions of Arkansas' FOI laws; that Day, Martin, Wallace, and Hawkins waived their rights under FERPA; that the records sought by plaintiff are "public records" under the Arkansas FOI laws; that the defendants have based their refusal to release the records on the provisions of the federal FERPA statutory scheme; that the defendants violated the Arkansas FOI laws; and that FERPA does not authorize defendants' refusal to comply with the FOI act.

These allegations implicate what has become known as the "well-pleaded complaint" rule. *See* 13B C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure*, § 3566, pp. 82–106. This rule requires that the "federal question" must appear on the face of the complaint. *See*, for historical perspective, *Gold–Washing & Water Co. v. Keyes*, 96 U.S. 199, 24 L.Ed. 656 (1878). As Messrs. Wright, Miller and Cooper explain, there are three implications to the rule:

First, it bars invoking jurisdiction on the basis of an answer raising a federal defense....

Second, the well-pleaded complaint rule bars plaintiff from invoking original federal jurisdiction by anticipating in the complaint a defense that the defendant will raise....

\* \* \* \* \* \*

The final aspect of the ... rule is that plaintiff cannot win admission to federal court by allegations to support his own case that are not required by nice pleading rules.

Wright, Miller & Cooper, *id.* at pp. 83–87.

Application of the well-pleaded complaint rule shows clearly that count one of plaintiff's complaint does not "arise under" federal law. Plaintiff seeks to have the records released under Arkansas' FOI act. Plaintiff "anticipates" that defendants will raise the provisions of FERPA as a de-

fense, and then tells us why FERPA is not a valid defense. Plaintiff does not, and could not in good faith, contend that FERPA *requires* the disclosure she seeks. The most that plaintiff can and does say is that FERPA *does not prohibit* the requested release of the records. As such, plaintiff's claim is clearly one under the state FOI law and plaintiff merely "anticipates" that defendants will raise FERPA as a defense to disclosure. As stated by the Supreme Court:

> [I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). The same rule applies to original actions.

Thus, count one of the plaintiff's complaint does not state a federal claim and this claim lacks an independent basis for the assertion of federal jurisdiction.

#### (b) *Count Two*

█ In count two plaintiff alleges that the actions and conduct of the defendants violate her First, Fifth, and Fourteenth Amendment rights "in that they hinder her access to information as a citizen and as a future law student." Defendants are further alleged to have violated "plaintiff's rights under 20 U.S.C. § 1232g in which she has sought and continues to seek records related to incidents of sexual as-. sault and other violent crimes" at the Fayetteville campus. Finally, plaintiff alleges that defendants' actions violate her right to equal protection of the law "in that the University of Arkansas Department of Public Safety has concurrent police jurisdiction with both the Washington County Sheriff's Department and the Fayetteville Police Department." Plaintiff concludes that if the Police Department or the Sheriff's Department had conducted the investigation at issue, plaintiff would have access to that information pursuant to the state FOI laws.

It is difficult to ascertain exactly what it is that plaintiff contends violates what constitutional provisions. Plaintiff seems to assert that the nondisclosure of the records violates the equal protection clause, but the only basis for such contention is said to be that the sheriff's department and city police department routinely release similar information under the state FOI law while the university police do not. In other words, plaintiff asserts that the university police do not comply with the state FOI law but the sheriff's department and city police department do.

The court does not believe that plaintiff has alleged, in count two, a violation of the equal protection clause. The county and the city may have concurrent police jurisdiction within the City of Fayetteville, but this does not transform a failure to comply with the state FOI law on the part of one of them into a violation of the equal protection clause. Such a violation remains what it is—a violation of the state FOI law. This is easily understood if one hypothesizes a situation in which neither the city, county, or university were to comply with the state FOI law. In such a case, one would be treated in an identical manner by each jurisdiction, albeit in violation of state law. Therefore, the equal protection clause would not be implicated. However, under plaintiff's apparent theory, if the city complied with the FOI law, this would immediately transform the failures of the university and the county to comply with state law into violations of the equal protection clause.

The court concludes that plaintiff's attempt in count two to state a claim for a violation of the equal protection clause is in reality nothing more than an assertion that the Department of Public Safety has failed to comply with Arkansas' FOI law to the same degree and extent as have the Fayetteville Police Department and the Washington County Sheriff's Department. Even if true, this is yet another attempt to transform a claim based upon state law into a federal lawsuit. Accordingly, the alleged equal protection aspect of count two is not

supported by an independent basis for the assertion of federal jurisdiction.

■ As noted, plaintiff also avers that plaintiff's rights under 20 U.S.C. § 1232g (FERPA) were violated by the defendants. Courts have held that although FERPA creates no private cause of action, *see Tarka v. Cunningham*, 917 F.2d 890 (5th Cir. 1990); *Webster Groves School Dist. v. Pulitzer Publishing Co.*, 898 F.2d 1371 (8th Cir.1990); *Girardier v. Webster College*, 563 F.2d 1267 (8th Cir.1977), a plaintiff may assert a FERPA violation as the basis for a claim under § 1983. *See*, generally, *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Fay v. South Colonie Central School Dist.*, 802 F.2d 21 (2d Cir. 1986).

■ It cannot be doubted that the purpose of FERPA is to regulate the release of student records. Before personally identifiable information from the education records of a student may be disclosed, the consent of the student or parent must be obtained. *See Klein Indep. School Dist. v. Mattox*, 830 F.2d 576 (5th Cir.1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988); *Lawson v. Edwardsburg Public Sch.*, No. 1:90–CV–68, 1990 WL 359811 (W.D.Mich., Nov. 14, 1990) (LEXIS, 1990 U.S.Dist.LEXIS 15290);. An educational institution that unlawfully releases records may lose federal funding. *See* 20 U.S.C. § 1232g(b)(1).

■ However, in order to assert a claim based upon a violation of FERPA, even if actionable in some manner, one must allege that it is the rights of a student or parent which have been violated. *See Lawson, supra*. The term, "student" does not include one who has not been in attendance at an educational institution. *See* 34 C.F.R. § 99.3. In the case at bar, it is obvious from the face of the complaint that plaintiff does not complain of the release of information by the defendants, but rather their *refusal* to release information. Furthermore, a violation of FERPA must be premised upon a release of information, or refusal to do so, pertaining to the plaintiff's attendance or that of a plaintiff's children. *See Lawson, supra; Mattox, su-*

*pra;* 20 U.S.C. § 1232g(a)(1)(A). Plaintiff does not allege a violation of FERPA, as the records she seeks do not pertain to her nor does plaintiff allege that she has ever attended the Fayetteville campus. Thus, plaintiff has not alleged that her FERPA rights were violated and it follows that this claim is not properly before the court. *See Tarka v. Franklin*, 891 F.2d 102 (5th Cir. 1989).

Finally, plaintiff alleges in count two that her First Amendment rights were violated by defendants' conduct in that the defendants hindered her access to information as a citizen and as a future law student. However, the First Amendment right of access has not definitively been held to apply to student administrative proceedings.

Although the Supreme Court has held "that the right to attend criminal trials is implicit in the guarantees of the First Amendment," *see, Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), it never has held that there is a constitutional right of access to civil trials. *See id.* at 580 n. 17, 100 S.Ct. at 2829 n. 17. The court further assumes that the public has less of an interest in obtaining access to records of the post-secondary educational institution disciplinary proceedings of others than it would in access to records of general civil litigation in the courts.

The Eighth Circuit has yet to address the issue, although it did find a First Amendment right of access to contempt proceedings, as a "hybrid" of criminal and civil proceedings. *See In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir.1983) ("Arguably, the public interest in securing the integrity of the fact-finding process is greater in the criminal context than the civil context, since the condemnation of the state is involved in the former but not the latter, but it is nonetheless true that the public has a great interest in the fairness of civil proceedings.").

The Eighth Circuit has clearly indicated that the media and the public stand on the

same footing regarding the right to access to information. *See Webster Groves, supra.* With regard to the somewhat (though barely) analogous issue of "sealing" judicial records, the Supreme Court and the Eighth Circuit have indicated that there is a limited common-law right of access to judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Webster Groves, supra.* Even with regard to records of judicial proceedings, however, the Eighth Circuit recognizes no "strong presumption" favoring access. *See Webster Groves, supra; United States v. Webbe,* 791 F.2d 103 (8th Cir.1986). The Supreme Court never has found a First Amendment right of access to civil proceedings or to the court file in a civil proceeding. This court believes it is obvious that the public has a far lesser interest in a post-secondary school's investigatory and disciplinary records than it has to records of judicial proceedings.

Nonetheless, at least one court has recently recognized a claim for such records as implicating the First Amendment. *See Bauer v. Kincaid,* 759 F.Supp. 575 (W.D.Mo.1991). In *Bauer,* the plaintiff, a student-journalist, argued that if FERPA imposes a penalty for release of criminal investigation and incident reports, FERPA violates her First Amendment rights. The court, in *Bauer* acknowledged that journalists do not enjoy special access to government files, because this would, in the court's view, constitute a denial of equal protection to those members of the public not associated with the news media. However, the court held that members of the general public enjoy a First Amendment right to receive access to government records concerning crime in the community and the activities of law enforcement agencies. *See Bauer,* at 594.

With all due respect to the *Bauer* court, this court finds no support for such a proposition in the cases of the Supreme Court nor in the cases from the Eighth Circuit. This is not to say that the University could or could not be punished for releasing the records if it chose to, nor that the media could be censured for publishing the

records, because the release of accurate information is, beyond cavil, one of the cornerstones of democracy, and any restriction of such a freedom must be based upon compelling governmental interests and sufficiently tailored so as not to exceed in scope that mandated by absolute necessity. It is a *non sequitur* to say, however, that merely because the press may have a right to print accurate information, for example, regarding the identities of crime victims and gory details of the crime, does not, by any stretch of the imagination, compel the conclusion that members of the general public have a right to acquire that information from any governmental employee, or body which might possess the same. The First Amendment prohibits the "government" and its officials from restricting the public's (and the media's) use of information gathered by them, but it does not require that "government" and its officials aid in the gathering of such information. Put another way, except in narrowly defined cases, the public cannot be restrained by government in the use of information which is possessed, but the First Amendment does not mandate that government give or produce information for public access and dissemination. That is the purpose of the various FOI laws enacted by federal and numerous state legislative bodies.

It seems obvious to the court that if the First Amendment *required* such disclosure, then the dozens of state and federal FOI laws would be redundant, unnecessary, mere surplusage and meaningless. The court thus holds that there is no constitutional right of general public access to the disciplinary or investigatory records of a post-secondary educational institution. It follows that any "right" to such records must, therefore, arise by virtue of federal or state statutory or common law. Plaintiff does not allege the existence of any federal common law which would *mandate* disclosure, nor of any federal statutory law which would do so. Therefore, plaintiff's claim of a right to the requested information must be based upon state law. Thus, there is no independent jurisdictional sup-

port for such a claim to be heard in federal court.

Plaintiff advances no other theories justifying federal court involvement in the allegations of count two. It follows that count two in its entirety is without an independent basis for jurisdiction.

### (c) *Count Three*

Plaintiff does not even purport to state any independent basis for the exercise of federal jurisdiction of the claims advanced in count three. Count three is entitled "Violation of the Arkansas Freedom of Information Act" and appears to state a claim for just that. Thus, there is no basis for the exercise of federal jurisdiction over this claim. Federal jurisdiction *vel. non* must then arise under the allegations of count four.

### (d) *Count Four*

■ In count four, plaintiff essentially restates the previous claims, seeking injunctive relief "ordering the University of Arkansas system to comply with the ... Arkansas Freedom of Information Act...." It is clear that this is what plaintiff's lawsuit "is all about." However, plaintiff, perhaps inadvertently, adds the additional allegation that because she is unable to gather information regarding campus crime, she is in some manner denied equal police protection. The foregoing discussion demonstrates that plaintiff, as a non-student, is not within the class of persons to which FERPA is applicable, *see Tarka I,* 891 F.2d at 105, and that plaintiff does not seek to enforce rights which FERPA secures to her even if she were, in fact, a "student."

However, even though the court has previously indicated that plaintiff's purported equal protection claim based upon the University's alleged non-compliance with state FOI laws is not cognizable in this court, the court interprets the allegations of count four as attempting to state a separate equal protection claim, *i.e.* that the State of Arkansas, through the university system, will afford the plaintiff unequal police protection because she hopes to become a student at the Fayetteville campus.

This same allegation was made in the *Bauer* case. *See Bauer,* at 589. Of this allegation Judge Russell Clark wrote:

> If FERPA imposes a penalty for the disclosure of student security and crime reports produced by a non-commissioned campus law enforcement unit, FERPA creates an irrational classification in violation of the equal protection component of the due process clause of the Fifth Amendment.

*Bauer,* at 592.

Of this, this court would first note that FERPA does not even appear to prohibit or penalize the disclosure to an alleged crime victim the results of disciplinary proceedings related to the crime. *See* 20 U.S.C. § 1232g(b)(6). Secondly, this is merely an attempt to explain *why* FERPA does not qualify as a valid defense to an FOI request. Under the well-pleaded complaint rule, discussed *supra* at pp. 1024–1025, this does not establish the claim as one arising under federal law. To say that FERPA is not a valid defense because it is not applicable by its terms or because FERPA violates the equal protection component of the Fifth Amendment is simply to state that FERPA is not a valid defense to an action under state FOI laws.

Judge Clark, in *Bauer* did not discuss the jurisdictional problem occasioned by the well-pleaded complaint rule, however, this court believes that cases from the Supreme Court illustrate that federal jurisdiction is lacking in the case at bar. In *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), the California state tax board, charged with the duty of collecting state taxes, sought to collect state taxes on paid vacations from construction workers who had bargained for the vacations under a collective bargaining agreement regulated by ERISA. The defendant contended that the state tax law authorizing collection of the taxes was preempted by ERISA. Plaintiff, however, contended that ERISA was not a valid defense to the state tax collection suit. When the case reached the Supreme Court, Justice Brennan, writing for the court, held that because of the well-

pleaded complaint rule a federal court would not have original jurisdiction of the case. The court also held that neither the presence of ERISA in the case or the question of whether ERISA preempted the tax statute made the suit a federal claim:

> [I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.

*Franchise Tax Board,* 463 U.S. at 103 S.Ct. at 2850.

This discussion indicates that even if it is plaintiff's position that the equal protection clause (or component of the Fifth Amendment) prohibits the defendants from relying upon FERPA as a defense to plaintiff's FOI claim, this nonetheless does not state a federal claim regardless of the merits. Therefore, even if Judge Clark is correct that FERPA could be construed in a manner violative of equal protection, *see Bauer,* at 594–95, this does not necessarily confer jurisdiction on a federal court to decide the claim.

Finally, although the court does not base its decision solely on this issue, plaintiff's standing to require release of the judicial board hearing involving Day, Wallace, Hawkins, and Martin, is highly questionable.

■■■■ The "case or controversy" requirement of Art. III of the Constitution defines, with respect to the judicial branch, the idea of separation of powers on which the federal government is founded, and the Art. III doctrine of "standing" has a core constitutional component that a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. The concept of standing presents questions that must be answered by reference to the Art. III notion that federal courts may exercise power only in the last resort and as a necessity, and only when adjudication is consistent with a system of separated powers and the dispute is one traditionally thought to be capable of resolution through the judicial process.

*See generally Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Essentially, the concept of standing requires that a plaintiff allege personal injury fairly traceable to the defendant's allegedly unlawful conduct which is likely to be redressed by the relief requested. The injury alleged must be "distinct and palpable," *Gladstone, Realtors v. Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), and not "abstract," "conjectural," or "hypothetical." *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

■■ Plaintiff alleges that "she has been accepted for admission" at the University for the fall, 1991, semester. She further states that she has, in the past been refused access to the records pertaining to the "dorm incident" in which she was not involved in any manner. Plaintiff seeks declaratory relief in count one, damages in count two, declaratory relief in count three, and injunctive relief in count four. Plaintiff does not and could not allege that she has been harmed as a student in the past, caused by any conduct of the defendants. Her only claim for the past refusal of the defendants to provide the documents is founded upon her status as a member of the public. This claim, as we have seen, is founded solely on the Arkansas FOI laws. Plaintiff does indeed have standing to challenge the past refusal of the defendants to obey state law, but this court lacks jurisdiction of such a claim.

Regarding future conduct, plaintiff alleges only that she has been accepted for the fall, 1991, semester, at the University of Arkansas School of Law. She does not allege that she will, in fact, attend school there. For all this court knows, plaintiff may have been also accepted at Harvard, Yale, and the University of Thessalonika. Even if, however, plaintiff had sufficiently alleged that she will, in fact, become a student at the University, this in no way relates to the denial by the University of plaintiff's past request for documents regarding Wallace, Day, Hawkins, and Martin, to which plaintiff would be entitled

only by virtue of her status as a citizen on her state law FOI claim. Plaintiff does not and could not allege that the former denial of her request for "dorm incident" records will, in some manner, deny her equal police protection after she becomes a student. Further, the requested relief, *i.e.* the release of the particular records pertaining to the "dorm incident," would in no way enhance the quality of the police protection she may receive after she becomes a student.

The Supreme Court has repeatedly held that an asserted right to have governmental bodies act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court. In *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), for example, the Court rejected a claim of citizen standing to challenge Armed Forces Reserve commissions held by members of Congress as violating the Incompatibility Clause of Art. I, § 6, of the Constitution. As citizens, the Court held, plaintiffs alleged nothing but "the abstract injury in nonobservance of the Constitution...." *Id.*, at 223, n. 13, 94 S.Ct. at 2933, n. 13. In *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the court rejected a claim of standing to challenge a government conveyance of property to a religious institution. Insofar as the plaintiffs relied simply on "their shared individuated right" to a government that made no law respecting an establishment of religion, *id.*, at 482, 102 S.Ct. at 763–64 (quoting *Americans United for Separation of Church & State, Inc., v. United States Dept. of Health, Education & Welfare*, 619 F.2d 252, 261 (3rd Cir.1980)), the court held that plaintiffs had not alleged a judicially cognizable injury. "[A]ssertion of a right to a particular kind of government conduct, which the government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." 454 U.S., at 483, 102 S.Ct. at 764. *See also United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

Although plaintiff may conceivably have standing to assert claims based upon future inadequate police protection caused by future FOI violations by the defendants once she becomes a student at the University of Arkansas, if she does, this court does not believe that merely because she has been "accepted" for admission in the future, she has standing to raise the future quality of the police protection she might be accorded. Additionally, this is merely an "abstract" injury, insofar as plaintiff is concerned, unless one were to accept the proposition that she is likely to become a crime victim herself, which is a slim reed upon which to hinge a present lawsuit, even if it were construed as presenting a federal claim.

In *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court recently examined the concept of third-party standing. The criminal defendant in that case was held to have third-party standing to raise the equal protection rights of improperly excluded venire persons. However, central to such an inquiry, the Court said, is the "likelihood and ability of the third parties ... to assert their own rights." There are no "daunting barriers" to such a suit by an actual student crime victim who can easily raise any discriminatory conduct in the manner in which plaintiff seeks to do so. Further, one need not necessarily wait until a crime has actually occurred, for it is conceivable that a student presently living on campus could raise the issue in a proper forum at the present time, assuming that such a student could show some sort of imminent "palpable" injury in fact. There is certainly no reason for this court to allow a non-student to raise the rights of actual students to future non-discriminatory and adequate police protection, even if such a claim could be construed, in the circumstances presented, as constituting a federal claim.

Thus, plaintiff has standing to assert only the state FOI law claims of the general public, a claim not properly resolved in this court. Plaintiff lacks standing to as-

sert the rights of present students to equal police protection.

### III. *Conclusion*

Our founding fathers, wisely in this court's view, provided that federal courts would be courts of limited jurisdiction and, unless the constitution or proper federal law specifically provided otherwise, that state courts would hear controversies arising between the citizens of the various states. In spite of that, it seems that most of us, ignoring the old adage cautioning us not to do so, desire to "make a federal case" out of about everything that bothers us.

In words that are particularly appropriate to this case, the United States Supreme Court, in *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76, 62 S.Ct. 15, 86 L.Ed. 47 (1941), eloquently explained the principle of limited jurisdiction for federal courts as follows:

> This is not a sacrifice of justice to technicality. For the question here is not whether Chase and Indianapolis Gas may pursue what they conceive to be just claims against the City, but whether they may pursue them in the federal courts in Indiana, rather than in its state courts. The fact that Chase prefers the adjudication of its claims by the federal court is certainly no reason why we should deny the plain facts of the controversy and yield to illusive artifices. Settled restrictions against bringing local disputes into the federal courts cannot thus be circumvented.

> These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts. *See Madisonville Traction Co. v. Mining Co.*, 196 U.S. 239, 255 [25 S.Ct. 251, 257, 49 L.Ed. 462 (1905)], and *Ex parte Schollenberger*, 96 U.S. 369, 377 [24 L.Ed. 853 (1877)]. The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state

sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts,' in order to keep them free for their distinctive federal business. *See Friendly, The Historic Basis of Diversity Jurisdiction*, 41 Har.L.Rev. 483, 510; *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 108–09 [61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941)]; *Healy v. Ratta*, 292 U.S. 263, 270 [54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)]. 'The policy of the statute [conferring diversity jurisdiction upon the district courts] calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution.... Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.'

This is a dispute between a citizen of the State of Arkansas complaining about the policy of a state university and its officials in respect to their failure to produce certain records held and developed by University of Arkansas officials which the Arkansas citizen claims to have a right to see because of the provisions of a state statute. There is no better or more appropriate forum to hear that controversy than state court, and the Constitution requires it or at least requires that this court not exercise jurisdiction over this matter.

The court concludes that plaintiff's complaint must be dismissed for lack of federal jurisdiction and because plaintiff lacks standing to assert any claims other than her state law claims arising under the state FOI laws.

A final order effectuating the foregoing will be concurrently entered.