STATE OF MAINE
ANDROSCOGGIN, SS.

RECEIVED & FILED

FEB 13 2001

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CV-01-21
TED -AND- 2/13/2001

PRESIDENT AND TRUSTEES
OF BATES COLLEGE,

    Plaintiffs

v.

CONGREGATION BETH ABRAHAM,
ARNOLD LEAVITT,
MICHAEL SHAPIRO and
MARTIN SHORR,

    Defendants

DECISION AND ORDER

## I. STATUS OF CASE

This matter was initiated by plaintiff President and Trustees of Bates College (Bates) as the overseers and administrators of Bates College, a Maine corporation existing as a private educational institution at Lewiston, Maine.

Defendant Congregation Beth Abraham (Congregation) is a legal entity under the laws of the State of Maine which operates a Synagogue for members of the Jewish faith in Auburn, Maine.

Arnold Leavitt and Michael Shapiro are officers in the Congregation serving as president and as a member of the Board of Directors respectively.

Martin Shorr at times relevant to this action has served as the spiritual leader of the Congregation and has acted as cantor and rabbi.

Bates brings this action seeking injunctive relief to prevent Leavitt and Shapiro from any disclosure and the return of certain information given to them by

Steven Hochstadt a professor at Bates who serves as the faculty advisor to the Jewish Cultural Community (JCC) at Bates. The JCC is a recognized and sanctioned campus activity for students and receives some funding from the college.

## II. BACKGROUND

After hearing, the court finds the following facts.

Congregation Beth Abraham serves the spiritual needs of persons of the Jewish faith in the greater Lewiston-Auburn area. As part of its role it has traditionally opened its doors and welcomed area students at Bates College and other schools.

As the spiritual leader of the Congregation, Martin Shorr was expected to interact with the students, invite them to participate in services and functions of the congregation and make them feel welcome.

As a member of the Bates faculty, Steven Hochstadt is expected to offer service to the college community over and above his teaching requirements. Part of this function is fulfilled by his appointment by the college president as the faculty advisor to the JCC. In this role his is expected to interact with the students, to assist them in participating in their faith and to act as liaison with Congregation Beth Abraham.

During October of 2000, it came to Hochstadt's attention that there was an uneasiness and tension between the Jewish students on campus and Shorr. He was concerned that Shorr's conduct was interfering with the relationships of Bates' students and the Congregation and the practice of their faith. Hochstadt sent a letter

2

to Shorr and talked with several students. As a result of his talking with the students, one person (Student A) sent an e-mail (Pl. ex. 1a) over Bates' on-campus e-mail system complaining about Shorr's inappropriate conduct and detailing certain examples and named other students to whom he could speak.[1]

Student A also forwarded to Hochstadt a copy of an e-mail that Student A had received from Student B in March of 2000 (Pl. ex. 1b). This e-mail contained additional names and facts about specific instances of misconduct. When the e-mail messages were sent to Hochstadt, Student A specifically requested that the e-mail from Student B remain confidential and that Hochstadt not reveal its contents to any other person.

On the same day that he received the e-mails, Hochstadt met with Leavitt and Shapiro to bring the issue of Shorr's conduct with students to their attention. It was his purpose to alert them to the deteriorating relationship of the congregation because of Shorr's conduct in the hope that they could take some action to repair relationships with Bates students.

In order to reinforce the seriousness of the situation and to lend credibility to the students' claims, Hochstadt provided copies of the e-mails to Leavitt and Shapiro only with the understanding that they would not disclose any of the student's names. No other restrictions were asked or agreed to at that time.

---

1. Plaintiff's exhibits 1a and 1b have been impounded and sealed upon the agreement of all parties for the personal protection and confidentiality of the students.

On the next day, Hochstadt mailed a letter to Leavitt (Pl. ex. 2) asking that the letters (Pl. ex. 1a and 1b) not be shown to Shorr. He further added that:

> I really didn't have permission to give copies of those letters away, but I thought they were important for you both to know about. So please keep them in your possession, or destroy them when you are finished with them.

Leavitt never responded to the letter and Hochstadt never made any follow-up contact to confirm an understanding of conditions from Leavitt or Shapiro; consequently, the court finds there was no agreement upon the terms of the October 31st letter. (Pl. ex. 2).

The letter and the testimony at the hearing is at odds with Hochstadt's affidavit submitted in support of the request for the injunction. In the affidavit he said the e-mail communications were given to him "with the understanding that [he] would . . . maintain them in my capacity as Advisor to the [JCC] and that I would not disclose . . . these . . . to any third party." His disclosure has resulted in this litigation.

Hochstadt further stated in his affidavit that the letters were given to Leavitt and Shapiro for the purpose of reviewing Shorr's relationship with students and staff at Bates; that there was an "express understanding" that the documents would not be released to Shorr or any other third party; that the documents "would not be relied upon or used as the basis for any personnel action or decision as to Rabbi Shorr; "and, that Leavitt and Shapiro agreed to these conditions."

The court finds specifically that no conditions as recited in the affidavit were demanded or agreed to.

4

The Board of Directors of the Congregation subsequently initiated proceedings to dismiss Shorr from his position. The students' allegations as set out in the letters have played a substantial role.

Pursuant to 13 M.R.S.A. § 2985 (records of a parish are open to inspection by members), and 26 M.R.S.A. § 631 (employee's right to inspect personnel file), Shorr has demanded that copies of all material in his personnel file be made available to him. Notwithstanding Leavitt's testimony that the Congregation does not maintain a "personnel file," it does possess records and information, including the subject documents, which pertain to Shorr's employment status and performance that are covered by section 631.

It is the policy of Bates to vigorously guard and protect the confidentiality of all student records in accordance with the Family Educational and Privacy Rights Act, 20 U.S.C. § 1232g, *et seq.* (FERPA). In order to comply with FERPA and protect student's privacy Bates has enacted written policies and procedures regarding admission, academic, disciplinary and similar records. A separate policy exists regarding computer use by students and faculty using the college's internet and e-mail systems from which the e-mails in question were generated; however, no evidence has been offered concerning these standards.

It is common practice for faculty advisors for campus organizations to create and maintain records of activities and concerning students which may be kept in their campus offices or files separate and apart from other student records traditionally maintained by the administration. Testimony at the hearing shows

that there is substantial question in the Bates community as to whether the college's policies and procedures on privacy and confidentiality apply to the records regarding student activities.

At the time that Hochstadt provided the documents to Leavitt and Shapiro, he did not notify or seek the advice or authorization of the Bates administration. When Bates learned of the disclosure it initiated this action.

### III. FAMILY EDUCATIONAL AND PRIVACY RIGHTS ACT

The Family Educational and Privacy Rights Act, 20 U.S.C § 1232g, exists "to provide greater privacy safe-guards to parents and students through the application of fair information practice." 41 F.R., no. 188, p. 89. To enforce the privacy regulations and discourage improper disclosure of student information, educational institutions that receive federal funds, of which Bates College is one, may have federal funds withheld which undoubtedly would have a substantial impact upon the students and college operations and programs.[2] Exceptions to the privacy requirements are not applicable in the present case. See 20 U.S.C. § 1232(a)(5)(A) (Release of "directory information); and 34 C.F.R. § 99.30 *et seq.*

A breach of the confidentiality requirements by an unauthorized disclosure may be enforced by the Secretary of the Department of Education.

---

2. 20 U.S.C. § 1232g

(b)(1) "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information . . .) of students without the written consent of [the student] to any individual, agency or organization," other than in several situations not relevant here.

6

20 U.S.C. 1232g(f)

"The Secretary shall take appropriate actions to enforce this section and to deal with violations of this section, in accordance with this chapter, except that action to terminate assistance may be taken only if the Secretary finds there has been a failure to comply with this section, and he has determined that compliance cannot be secured by voluntary means."

## IV. EDUCATIONAL RECORDS

Key to the determination of the present case is whether the documents furnished by Hochstadt are records within the meaning of FERPA. Even though they are documents generated by students outside normal academic exercises, the court concludes they are records covered by the Act.

20 U.S.C. 1232g(a)(4)(A)

"For the purpose of this section, the term 'educational records' means, except [certain documents not applicable here], those records, files, documents, and other materials which--
(i) contain information directly related to a student; and
(ii) are maintained by an educational agency or institution or by a person acting for such agency or institutuion.

The e-mail messages here were generated by students and directed to the faculty advisor assigned by the college president to assist and guide students in the interaction of their academic lives and practice and maintenance of their faith. Although the messages were directed at the conduct of a person outside the college community, they named several students and their involvement with a spiritual leader (Shorr) whose duty it was to interact with them and assist in the spiritual enrichment of their lives. The records directly related to the named students and sought the advice and assistance of a person acting for the college.

Although the e-mail correspondence may be of a different character than most records, files and documents maintained by an educational institution, the statute, § 1232g(a)(4)(A) does not limit the definition of "other materials." As such that term ought to be liberally construed to be inclusive rather than exclusive to carry out the Act's purpose and intent for the protection of the students.

Having concluded that the documents released by Hochstadt are "educational records" subject to the rules of privacy and confidentiality, it was a violation to disclose the information to Leavitt and Shapiro that was compounded by giving them copies. There is no evidence of any authorized consent to their release even if it was done for the limited purpose of improving the relationship among students with Shorr and the Congregation.

The obligation to protect student's privacy is placed squarely upon Bates. The expected confidentiality was unquestionably and unjustifiably broken by Hochstadt, who received the information in his role as a college official and student advisor.

## V. STANDING TO BRING ACTION

As a statute that proscribes certain conduct, enforcement and remedies must follow the legislative form. The only sanction for violation is action by the Secretary. 20 U.S.C. § 1232g(f). All federal courts that have addressed the issue have concluded or acknowledged that there is no private right of action unless it is coupled with an action under 42 U.S.C. § 1983 (civil rights) or some other actionable right. *See e.g., Doe v. Harvard University,* 56 F.3d 59 (1st Cir. 1995);*Tarka v. Franklin,* C.A. 5 (Tex.) 1989, 891 F.2d 102 (stating that FERPA does not explicitly

provide for a private cause of action and that its legislative history does not indicate that the drafters of the legislation intended for there to be one), cert. denied 110 S.Ct. 1809, 494 U.S. 1080, 108 L.Ed.2d 941; *Langston v. ACT*, 890 F.2d 380, 387 n.12 (11th Cir. 1989) (noting other courts have decided that no private right of action is created); *Fay v. South Colonie Central School District*, 802 F.2d 21, 33 (2nd Cir. 1986) (stating that FERPA, by itself does not give rise to a private cause of action); *Girardier v. Webster College*, 563 F.2d 1267, 176-77 (8th Cir. 1977) (stating that enforcement is solely in the hands of the Secretary of Health, Education and Welfare and that, under such circumstances, no private cause of action arises by inference).

The Second Circuit, in *Fay*, held that, although FERPA does not create a private right of action by itself, FERPA creates an interest that may be vindicated in a section 1983 action because "Congress did not create so comprehensive a system of enforcing the statute as to demonstrate an intention to preclude a remedy under section 1983." *Fay*, 802 F.2d at 33. The United States District Court for the District of New Hampshire has held similarly. *See Belanger v. Nashua, New Hampshire, School District*, 856 F.Supp. 40, 42-46 (D.N.H. 1994). Even if this court were to recognize a cause of action under § 1983, however, the Plaintiff has not sought relief pursuant to § 1983 in this case. In addition, Bates College, as a private institution, does not act under the color of state law. Therefore, any claim under FERPA must be dismissed. *Fay v. South Colonie Cent. School Dist.*, C.A. 2 (N.Y.) 1986, 802 F.2d 21. Bates College cannot bring a § 1983 or other action against itself.

FERPA is enforceable by the Secretary only to educational institutions receiving federal funds. None of the defendants are subject to the Act.

## V. CONTRACT

At oral argument, Bates acknowledged its difficult position as a third party seeking to enforce the statute that its agent violated. It now offers the theory that a contract existed placing obligations and limitations upon the Congregation to preserve the confidentiality of the documents.

In order to establish a contract the plaintiff must establish certain criteria. First, there must be a meeting of the minds of the parties to a contract; that is, a mutual assent to be bound by its terms. This is essential to the formation of the contract. See Zamore v. Whitten, 395 A.2d 435, 439-40 (Me. 1978). An uncommunicated intention is insufficient to constitute an acceptance. See id. at 439.

Having found that there was no agreement or meeting of the minds as to the use or release of any information therein, the court finds there is no contract.

Further infirmities apply to the contract theory. Every contract requires consideration to support it. Any promise not supported by consideration is unenforceable. There is a lack of consideration here for any contract to exist between Bates and the Congredgation. See id. at 440 (citing Congregation Beth Abraham v. People's Savings Bank, 113 A. 53 (1921)).

A contract here would cause the Congregation to violate the state statute requiring them to release personnel file information 36 M.R.S.A. § 631. A contract that calls for a violation of law is void as against public policy. "It is a fundamental

10

and elementary rule that the courts will not enforce illegal contracts, or contracts which are contrary to public policy, or which are in contravention of the positive legislation of the state." *Pringle v. Gibson*, 195 A. 695, 698 (Me. 1937); see also *Allstate Ins. Co. v. Elwell*, 513 A.2d 269, 272 (Me. 1986) (stating that a contract is against public policy if it "clearly appears to be in violation of some well established rule of law").

And finally, the existence of a contract was never advanced in the complaint.

## VI. INJUNCTION

Maine law authorizing equitable injunctive relief is clear and well established. The plaintiff must show:

1. The applicant will suffer irreparable injury if the injunction is not granted;

2. that the injury outweighs any harm that the injunction would inflict on the defending party;

3. the plaintiff has exhibited a likelihood of success on the merits; and,

4. the public interest will not be adversely affected by granting the injunction.

*Ingraham v. University of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982).

The plaintiff has not demonstrated it "will suffer" irreparable harm. Should the Secretary invoke sanctions against Bates, it is reasonable to assume the loss of federal funds would have significant adverse affect on the students and college programs; but given the contingent nature of the enforcement section, (§ 1232g(f)) ("[A]ction to terminate assistance may be taken *only if* the Secretary has determined that compliance cannot be secured by voluntary means."), the liklihood of such

11

harm is at best uncertain. A violation leading to loss of funds occurs when an institution "has a policy or practice of permitting [unauthorized] release of records . . . ." 20 U.S.C. § 1232g(f). Hochstadt's action was a one-time incident, unlikely to be repeated given Bates' vigilant conduct in preserving privacy. "Irreparable harm" to the college is contingent and speculative.

If an injunction is granted the Congregation will lack substantial evidence in its proceedings to terminate Shorr and protect its members from inappropriate conduct and to preserve the integrity of the position of its spiritual leader. In turn, Martin Shorr would be denied access to key information used as the basis of his termination proceedings. On balance, Bates has not demonstrated that its potential injury outwieghs "any harm" that would be incurred by the Congregation or Shorr.

Because Bates has no private right of action and no contract exists to prevent further disclosure of information, there is little likelihood that plaintiff will ultimately prevail on the merits.

Bates has failed to meet the standard required for injunctive relief.

## VII. STUDENT PRIVACY RIGHTS

Whereas FERPA exists for the protection of students and parents, and because Hochstadt did give the documents to Leavitt and Shapiro with at least an understanding that they would protect the identity of the students named there, the Congregation shall redact the documents to strike the names of any student and any student address mentioned, including electronic addresses or e-mail identifiers.

12

Any additional copies may be made only in compliance with 26 M.R.S.A. § 631. If a meeting is held with Congregation members relative to termination proceedings, the unredacted information within the documents may be recited orally to the members but only to the extent necessary and relevant to the proceedings. At the final conclusion of the proceedings, all copies in the possession of any defendant shall be returned to plaintiff's counsel and destroyed.[3]

## VIII. DECISION

The clerk shall make the following entries as the Order of the court.

1. The findings of the court shall be incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

2. Plaintiff's Motion for a Preliminary Injunctions is DENIED.

3. Further disclosure of the documents in question shall be governed by Part VII as set forth above.

4. Further proceedings may be heard by any justice pursuant to M.R. Civ. P. 65(f) subject to the provision of the Administrative Order regarding assignment of cases to individual justices.

So ordered.

DATED: February 13, 2001

Thomas E. Delahanty II
Justice, Superior Court

---

3. Although evidence was offered at the hearing on the preliminary injunction concerning proceedings for termination of Shorr, the court offers no opinion nor advice as to an appropriate procedure to be followed.