**WEBSTER GROVES SCHOOL DISTRICT, Appellees,**

v.

**PULITZER PUBLISHING COMPANY, Appellant.**

**No. 89-2559.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1989.

Decided March 27, 1990.

Rehearing and Rehearing En Banc Denied May 14, 1990.

Robert B. Hoemeke, St. Louis, Mo., for appellant.

Stephen C. Hiotis, Clayton, Mo., for appellees.

Before BOWMAN and BEAM, Circuit Judges, and ROSS, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Pulitzer Publishing Company (Pulitzer) appeals an order of the District Court[1] rejecting Pulitzer's efforts to open the proceedings in a lawsuit between the Webster Groves, Missouri, School District (School District) and a handicapped student. We affirm.

In November 1988, T.B., a fourteen-year-old public school student who had been classified as a handicapped child under the Education of the Handicapped Act (EHA), 20 U.S.C. § 1401(1) (1988), brought a loaded handgun to school, in violation of school policy, and threatened classmates with it. He was first suspended and then expelled from school. Before expulsion, T.B.'s individualized education program (IEP) committee met to determine whether the behavior that resulted in the discipline was a result of the child's handicapping condition. T.B.'s grandmother and legal guardian, a member of the IEP committee, disagreed with the committee's finding of no relation between the gun incidents and the handicap, thus entitling her to seek administrative review on T.B.'s behalf. The "stay put" provision of the EHA, prohibiting expulsion pending the outcome of the review proceedings, was triggered when she requested administrative relief. 20 U.S.C. § 1415(e)(3) (1988). The School District then sought in Missouri circuit court to enjoin T.B. from attending school pending exhaustion of his administrative remedies, see Honig v. Doe, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988), and was granted a temporary restraining order. Before the state court could hold a hearing on the School District's motion for a preliminary injunction, T.B. removed the case to federal district court. As the hearing on the motion for a preliminary injunction was about to begin in the District Court on the

afternoon of February 2, 1989, counsel for T.B. asked that the courtroom be closed to the public. The School District did not object. Ruling from the bench, Judge Hungate granted the request, whereupon a reporter for the *St. Louis Post–Dispatch*, a daily newspaper published by Pulitzer, left the courtroom without objecting. The hearing ended the same day, and five days later the court issued its memorandum opinion, which was filed under seal along with the rest of the court file.

On February 3, 1989 (the day following the hearing), Pulitzer filed motions to intervene and to open the courtroom. In an amended motion, Pulitzer also requested that the District Court unseal the court file. On March 2, 1989, Pulitzer filed a motion to stay the proceedings, which the District Court granted. The court held a hearing on the motion to intervene on May 25, 1989. On the day the stay was to expire, September 15, 1989, the District Court denied Pulitzer's motions to intervene and to open the courtroom and the file. By that time, the underlying proceedings between T.B. and the School District had been dismissed on the School District's motion.

The first issue is whether or not the motion to open the courtroom is moot, since the hearing is long over. Although neither party briefed or argued the mootness question, were we to render a decision in a case where no live controversy remains, we would be giving, in effect, an advisory opinion. "[F]ederal courts have never been empowered to issue advisory opinions." *FCC v. Pacifica Found.*, 438 U.S. 726, 735, 98 S.Ct. 3026, 3033, 57 L.Ed.2d 1073 (1978). We may adjudicate an apparently moot case, however, if it is one "capable of repetition" as to the wronged party "yet evading review" because of the time required to move the case through the courts. *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Because we believe this is such a case, we will address the question of

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

**1374**

whether or not the District Court took the proper precautions and made the appropriate findings of need when it closed the courtroom to the public in this case.[2] *See Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 6, 106 S.Ct. 2735, 2739, 92 L.Ed.2d 1 (1986) (case not moot even though transcript of closed preliminary hearing released); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982) (courtroom closed pursuant to mandatory statute so clearly capable of repetition); *Richmond Newspapers v. Virginia,* 448 U.S. 555, 563, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973 (1980) (Court found it was "reasonably foreseeable that other trials may be closed by other judges without any more showing of need than is presented on this record").

■ Pulitzer urges us to find a constitutional right of access to civil proceedings and to apply First Amendment standards to this case.[3] The District Court's order denying Pulitzer's motions appears to take that approach. Although the Supreme Court has held "that the right to attend criminal trials is implicit in the guarantees of the First Amendment," *Richmond Newspapers,* 448 U.S. at 580, 100 S.Ct. at 2829 (footnote omitted), it never has held that there is a constitutional right of access to civil trials. *See id.* at 580 n. 17, 100 S.Ct. at 2829 n. 17 ("Whether the public has a

right to attend trials of civil cases is a question not raised by this case, but we note that historically both civil and criminal trials have been presumptively open."). Pulitzer nevertheless suggests we join two other circuits that, according to Pulitzer, have so held. *See Stone v. University of Md. Medical Sys. Corp.,* 855 F.2d 178 (4th Cir.1988) (access sought to court file in civil rights suit);[4] *Publicker Indus. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir.1984) (finding First Amendment right of access to civil proceedings and granting access to hearing on motion for preliminary injunction against disclosure at stockholders' meeting). The Eighth Circuit has yet to address the issue, although we did find a First Amendment right of access to contempt proceedings, a "hybrid" of criminal and civil proceedings. *In re Iowa Freedom of Information Council,* 724 F.2d 658, 661 (8th Cir.1983) ("Arguably, the public interest in securing the integrity of the fact-finding process is greater in the criminal context than the civil context, since the condemnation of the state is involved in the former but not the latter, but it is nonetheless true that the public has a great interest in the fairness of civil proceedings.").

■ We find it unnecessary to our decision in this case to decide whether there is a First Amendment right of access applicable to civil proceedings. Any First Amend-

2. Pulitzer complains of the seven-month delay in resolving this issue, which delay, it contends, irreparably injured Pulitzer in its ability to cover the story since the proceedings between the parties are now over. We find this complaint to be without substance. Pulitzer did not make its motion to open the courtroom until the day after the hearing in the District Court ended. Therefore Pulitzer's case as to closing the courtroom was moot before it ever began and a prompt ruling on the motion would not have aided Pulitzer's news-gathering efforts. Our decision to review this issue as capable of repetition yet evading review, and thereby to reach the merits, protects Pulitzer's rights in future cases of a similar nature.

3. In the portion of its brief advocating First Amendment access to civil trials, Pulitzer states, "The First Amendment values served by public access to civil trials is [sic] particularly compelling when applied to the press." Brief of Appellant at 9. If by this statement Pulitzer means to

suggest that the media deserve special treatment not afforded the general public, we must disagree. The press has no greater right of access to the courts than does the public. *See, e.g., Nixon v. Warner Communications,* 435 U.S. 589, 610, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570 (1978) ("the guarantee of a public trial ... confers no special benefit on the press").

4. We do not agree with Pulitzer that the Fourth Circuit in *Stone* has "squarely addressed the issue." Reply Brief of Appellant at 6. As we read *Stone,* the issue was the sealing of records in a civil rights trial, not the closure of the courtroom. The Fourth Circuit clearly did not decide that public access to the records had First Amendment protection. It distinguished the constitutional and common law protections and then said, "On remand, [the district court] must determine the source of the right of access with respect to each document sealed. Only then can it accurately weigh the competing interests at stake." *Stone,* 855 F.2d at 181.

ment right of access that might apply would be qualified, not absolute. Given the nature and the circumstances of this case, our decision must be the same whether the case is governed by a First Amendment qualified right of access or a common law right of access. We take this view because this case involves a handicapped child proceeding under the EHA, records and testimony regarding his disability, and his educational records. Under any qualified right of access of which we can conceive, the District Court properly granted the motion of T.B.'s guardian to shelter the proceedings from public view.

The privacy of juveniles is protected by the legislatures and the courts of this country in a variety of ways. For example, in Missouri "[t]he general public shall be excluded" from juvenile court hearings. Mo. Rev.Stat. § 211.171.5 (1986). Juvenile court records are neither to be inspected nor disclosed, except to those who have a legitimate interest in them. *Id.* § 211.321. Certain juvenile records may be destroyed or sealed when the child reaches seventeen years old "if the court finds that it is in the best interest of the child." *Id.* § 211.321.4. In a federal juvenile delinquency proceeding, the minor's name and picture cannot be made public and the records of such a proceeding "shall be safeguarded from disclosure to unauthorized persons." 18 U.S.C. § 5038(a), (c), (e) (1988). Although it may be argued that the stigma of criminal proceedings distinguishes these situations from the present case, juvenile courts in Missouri also have jurisdiction over proceedings involving children in need of care or support, adoption proceedings, and guardianship proceedings. Mo.Rev.Stat. § 211.031.1 (1986). Records of those actions also are regarded as confidential. These measures all reflect a strong public policy favoring the special protection of minors and their privacy where sensitive and possibly stigmatizing matters are concerned. This strong public policy applies

forcefully to students classified as handicapped because of a learning disability or some other disability that affects their educational progress.

Under the Family Educational Rights and Privacy Act (FERPA) and the regulations thereunder, a school's release of a student's records or personally identifiable information to unauthorized persons will result in the withholding of federal funds. 20 U.S.C. § 1232g(b) (1988); 34 C.F.R. § 99.30 (1988). FERPA applies to T.B., and Congress, through the EHA, has further restricted the release of information when a handicapped student is involved. 20 U.S.C. § 1417(c) (1988).[5] Identifying information about such students is not to be released absent parental consent and its confidentiality is to be protected. 34 C.F.R. §§ 300.571, .572 (1988). Much of the information is to be destroyed at the parent's request when no longer needed by the school. *Id.* § 300.573. In judicial proceedings brought pursuant to the EHA, a great deal of this statutorily protected information inevitably will be placed before the court. "In addition to reviewing the administrative record, courts are empowered to take additional evidence at the request of either party...." *Honig,* 484 U.S. at 312, 108 S.Ct. at 598. In order to safeguard the confidentiality of such information in judicial proceedings, it therefore is appropriate to restrict access to the courtroom and the court file.

The Supreme Court has confirmed that "safeguarding the physical and psychological well-being of a minor" is a "compelling" state interest. *Globe Newspaper Co.,* 457 U.S. at 607, 102 S.Ct. at 2620. In that case, the Court found unconstitutional a statute mandating closure of criminal trials where a minor is the victim of a sex crime, favoring instead a case-by-case determination of "whether closure is necessary to protect the welfare of a minor victim." *Id.* at 608, 102 S.Ct. at 2621. The Court suggested that "[a]mong the factors to be weighed

---

**5.** The School District has suggested that the following procedural guarantee of the EHA indicates that a hearing like the one involved here is presumptively closed: "Parents involved in hearings must be given the right to: ... (2) Open the hearing to the public." 34 C.F.R. § 300.508(b)(2) (1988). That regulation, however, applies to state administrative hearings under the EHA, not to judicial proceedings.

are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." *Id.* Pulitzer is highly critical of the District Court for not weighing these factors in the court's order and memorandum. Brief of Appellant at 12, Reply Brief of Appellant at 11. *Globe Newspaper,* however, involved a criminal case with a minor victim, not a civil proceeding in equity concerning a handicapped child. The District Court therefore was not obligated to apply the *Globe Newspaper* factors. In any event, it seems perfectly clear that the factors articulated in *Globe Newspaper* that might be relevant to the present case all weigh heavily in favor of the District Court's order.

The hearing in the District Court was held to determine whether T.B. was such a danger to himself or others that he should be enjoined from attending public school. In granting the motion of T.B.'s guardian to close the proceedings, the District Court observed that the evidence was to include the testimony of minors who witnessed T.B. brandish the gun and threaten his schoolmates,[6] testimony of psychologists and psychiatrists as to T.B.'s mental status, and evidence of his handicap. In these circumstances, the District Court did not err in granting the motion for closure.

■ There remains Pulitzer's complaint that the procedure leading to the District Court's granting of the motion for closure was improper because the court gave no advance notice to the public. We disagree. The motion for closure was not made until the beginning of the hearing. The motion was made in open court and, hearing no objections from anyone, including the newspaper reporter then present in the courtroom, Judge Hungate granted the motion.[7] To provide an opportunity for objection by members of the public not then present in the courtroom, Judge Hungate *sua sponte* would have had to order a continuance and concoct some provision for public notice. We reject the notion that trial courts have any such duty.

■ We now deal with the issue of sealing the court file. The parties agree that there is "a common-law right of access to judicial records." *Nixon v. Warner Communications,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). This right of access is not absolute, but requires a weighing of competing interests. "Every court has supervisory power over its own records" and we review the sealing of the file for an abuse of the sound discretion of the trial court; "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 598, 599, 98 S.Ct. at 1306, 1312–13. When the common law right of access to judicial records is implicated, we give deference to the trial court rather than taking the approach of some circuits and recognizing a "strong presumption" favoring access. *United States v. Webbe,* 791 F.2d 103, 106 (8th Cir.1986).

Our Court has held that a qualified First Amendment "right of public access does extend to the documents filed in support of search warrant applications," as a search warrant is "an integral part of a criminal prosecution." *In re Search Warrant for Secretarial Area–Gunn,* 855 F.2d 569, 573 (8th Cir.1988).[8] There, however, we were dealing with records in a criminal matter,

---

**6.** Pulitzer argues that the District Court's granting of the motion for closure establishes a *per se* rule excluding the public from trials where minors are testifying. Brief of Appellant at 11; Reply Brief of Appellant at 12. We are satisfied, however, that the District Court has not established a *per se* rule. Judge Hungate's memorandum finds a strong justification for closure based on many considerations, not just the fact that minors were expected to testify at the hearing.

**7.** At the request of the School District's counsel, the court permitted an attorney for the Special

School District of St. Louis County to remain in the courtroom. Expert witnesses also were permitted to stay.

**8.** In this case, we held that the government's interest in the integrity of a continuing criminal investigation, which could be placed in jeopardy by premature disclosure of information in the affidavits supporting the application for the search warrant, was "compelling" and thus we denied immediate access to the sealed documents. *In re Search Warrant,* 855 F.2d at 574.

and the Supreme Court already had found a qualified First Amendment right of access to criminal trials. *Richmond Newspapers*, 448 U.S. at 580, 100 S.Ct. at 2829. The Supreme Court never has found a First Amendment right of access to civil proceedings or to the court file in a civil proceeding.

As with our discussion regarding closure, we find it unnecessary to decide whether a qualified First Amendment right of access to the court file attaches in a civil proceeding under the EHA. Whether we apply a constitutional standard or a common law standard, the result is the same: Pulitzer's interest in access to the records in this case clearly is outweighed by T.B.'s privacy interest and the state's interest in protecting minors from the public dissemination of hurtful information. Even though the judicial proceedings in this matter are completed, T.B. may be stigmatized and humiliated if the sensitive information in the record is made public, and that is reason enough to seal the file and keep it sealed.

We agree with the District Court's assessment that there is no reasonable alternative to sealing the file. We cannot unseal the record and then restrict dissemination of the sensitive information therein. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496, 95 S.Ct. 1029, 1046–47, 43 L.Ed.2d 328 (1975). Having reviewed the transcript and other sealed documents, we agree with the District Court's conclusion that redaction of the file would be virtually impossible because it is "replete with documentation, evaluations, and other information regarding T.B.'s learning disabilities and other personal information." Memorandum in Support of Order Denying Intervention at 4.

■ We see no reason, however, why the procedural information in the docket sheet in this cause should not be disclosed. *See In re Search Warrant*, 855 F.2d at 575.[9] We do not believe it would be burdensome to review and redact a copy of the docket sheet so that Pulitzer could have access to information about the procedural status of the case. We order the District Court to release a copy of the docket sheet in this case, with appropriate redaction of identifying or sensitive information. The original, unaltered docket sheet will remain under seal.

■ Finally, Pulitzer suggests that its motion to intervene, made pursuant to Federal Rule of Civil Procedure 24(b), was improperly denied. Such intervention is discretionary with the trial court, with its ruling to be reviewed only for abuse of discretion. *See NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973). The purpose of Pulitzer's motion was to gain access to the proceedings, and the District Court gave Pulitzer a full and fair opportunity to be heard on its arguments as to why it should have such access. Moreover, at the time of the District Court's ruling on Pulitzer's motion, the School District already had taken a voluntary dismissal of its suit, and there remained no case in which to intervene. We see no abuse of discretion in the District Court's denial of this motion.

To sum up, we direct the District Court to release a copy of the docket sheet in *Webster Groves School District v. T.B.*, No. 89–0022(C)(3), with appropriate redaction to remove identifying or sensitive information. In all other respects, the order of the District Court is affirmed. In so affirming, we find it unnecessary to decide

**9.** Pulitzer contends that "[t]he Eighth Circuit has specifically ruled that the sealing of the docket sheet is improper," Brief of Appellant at 6 n. 3, and that *In re Search Warrant* sets forth a "clear admonition that the sealing of the docket sheet is improper." Reply Brief of Appellant at 14. Pulitzer misreads the case. Although we are ordering release of a redacted copy of the docket sheet in this case, we do not do so because this Court has declared a *per se* rule forbidding the sealing of docket sheets. The Court in *In re Search Warrant* actually said, "As

a final matter, we note that the district court docket sheets have been sealed, no doubt out of an abundance of caution. We think this was improper and so direct the district court to unseal the docket sheets." *In re Search Warrant*, 855 F.2d at 575. The Court's holding in that opinion was limited to that case, as is ours here, and our order is based on our conclusion that a redacted copy of the docket sheet can be released without compromising T.B.'s privacy interests.

whether the First Amendment establishes a right of public access to civil trials or to court records in civil cases.