STATE of Missouri ex rel. PULITZER, INC., d/b/a St. Louis Post Dispatch, Tim Bryant and Virginia Thurman, Relators,

v.

The Honorable Henry AUTREY, Circuit Judge of the City of St. Louis, Missouri, Division 18, Respondent.

No. ED 77455.

Missouri Court of Appeals,
Eastern District,
Writ Division Five.

June 6, 2000.

Robert B. Hoemeke, Benjamin A. Lipman, Vincent D. Reese, Lewis, Rice & Fingersh, L.C., St.Louis, for relators.

Dwight A. Warren, Office of the Circuit Atty., C. John Pleban, Greenberg & Pleban, St. Louis, for respondent.

Before: JAMES R. DOWD, P.J., CLIFFORD H. AHRENS, J., and ROBERT G. DOWD, Jr., J.

## *OPINION*

JAMES R. DOWD, Presiding Judge.

Co-relator, Pulitzer Inc., through their newspaper reporter, Tim Bryant, and co-relator, Virginia Thurman, seek a writ of prohibition, or in the alternative, mandamus, to preclude Respondent, the Honorable Henry Autrey, from ordering closure of an evidentiary hearing on a motion for change of venue in a criminal case. On February 10, 2000, we issued our preliminary order in prohibition. We now make that writ absolute.

## *FACTS*

The record before us is problematic because, as will be treated hereafter, there were minimal proceedings had on the rec-

ord prior to the order of closure. We believe, however, from this record that the following represents a fair summary of the legally operative and substantially uncontroverted facts and these are sufficient for us to rule on the dispute before us.

The underlying case is *State v. Dodson,* No. 991–01537, pending in the circuit court of St. Louis City, in which the State alleges Robert Dodson, a St. Louis City police officer, is responsible for the death of a burglary suspect while being arrested. Relator Virginia Thurman is the mother of the alleged victim. Tim Bryant is a newspaper reporter covering the trial for the St. Louis Post–Dispatch, owned and operated by Relator Pulitzer, Inc.

Dodson filed a motion for change of venue from St. Louis City and a hearing on that motion was scheduled on February 10, 2000. On that day, prior to the change of venue hearing, both the prosecutor and defense counsel approached Judge Autrey in his chambers and informed him that they were in agreement that the hearing should be closed to the public. There is no evidence in the record before us that a motion to close the courtroom was filed or docketed by any party.

The record reveals Mrs. Thurman's private attorney was present in Judge Autrey's chambers at the time closure was discussed and he objected, arguing that, as the victim's mother, Mrs. Thurman had a right under the victim's rights statute, Section 595.209 RSMo (1994), to be present at the hearing and to have her attorney present so he could explain the court proceedings to her. Upon the objection, Judge Autrey allowed Mrs. Thurman to stay for the hearing, but prohibited her counsel from remaining in the courtroom.[1]

Judge Autrey, still in his chambers, then ordered the sheriff's deputies to clear the public, including reporter Tim Bryant from the courtroom. After closing the court-

room, the sheriff's deputies guarded the court room doors and refused to allow anyone to enter. Upon leaving the courtroom, Tim Bryant called an attorney for Pulitzer, Inc. who arrived shortly thereafter but was not allowed access to the courtroom to voice his objection to Judge Autrey's closure order.

Pulitzer, Inc.'s attorney and Mrs. Thurman's attorney immediately filed a joint petition for a writ of prohibition requesting that Judge Autrey be precluded from closing the courtroom. This court entered a Preliminary Order in Prohibition and ordered full briefing on the matter.

■ Because Relators raise important constitutional issues, are not parties to the underlying suit and have no adequate legal remedy, we may issue extraordinary relief in the form of a writ of prohibition. *State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 862 (Mo. banc 1986).

## I. Right of Access

The Supreme Court of the United States has held that the press and general public have a First Amendment right of access to criminal trials. *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). The Supreme Court has extended that right of public access to encompass pretrial proceedings, including change of venue hearings. *Press–Enterprise Co. v. Superior Court of California II,* 478 U.S. 1, 15, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

The public's right of access to criminal trials has long stood as a basic tenet of Anglo–American jurisprudence. "Both Hale in the 17th century and Blackstone in the 18th saw the importance of openness to the proper functioning of a trial ... [be-

---

1. Missouri's victim's rights statute provides that relatives of a homicide victim have "the right to be present at all criminal justice proceedings at which the defendant has such

right." RSMo 595.209 (1994). The statute does not extend this right to private attorneys retained by those relatives.

cause] it gave assurance that the proceedings were conducted fairly to all concerned ...." *Richmond Newspapers v. Virginia,* 448 U.S. at 569, 100 S.Ct. 2814, *citing* M. Hale, *The History of the Common Law of England* 343–345 (6th ed. 1820); 3 W. Blackstone, *Commentaries* 372–373. In *Press–Enterprise Co. v. Superior Court of California I,* 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the Supreme Court reasoned that:

> The value of openness lies in the fact that people not actually attending [criminal proceedings] can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of [criminal proceedings] and the appearance of fairness so essential to public confidence in the system.

The Supreme Court has not unanimously decided that the First Amendment of the United States Constitution provides for the public's right of access to the courtroom. However, Missouri's constitution expressly provides in Article 1, Section 14 that "[t]he courts of justice shall be open to every person." Additionally, there is support for such a right in Missouri's statutes. Section 476.170 RSMo (1994) states that "[t]he sitting of every court shall be public and every person may freely attend same." Section 510.200, RSMo (1994) also states "[a]ll trials upon the merits shall be conducted in open court and insofar as convenient in the regular courtroom." Thus, the existence of a right of public access to criminal proceedings in Missouri is certain.

While it is clear the public has a right of access to criminal proceedings, the Supreme Court has held that right is qualified and must be carefully balanced with the defendant's absolute Sixth Amendment right to a fair trial:

> [E]ven when a right of access attaches, it is not absolute. While open criminal proceedings give assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access. *Press–Enterprise Co. I,* 478 U.S. at 9, 106 S.Ct. 2735 (citations omitted).

In order to ensure that the public's right of access to court proceedings is not improperly circumvented, the Supreme Court has mandated that trial courts adhere to certain guidelines before closing a courtroom. This approach, in general terms, consists of a procedural requirement that the trial court allow the public the right to object to the closure of a courtroom, and a substantive requirement that the trial court make detailed findings, on the record regarding a proposed closure. These two prongs are applied to the facts of this case below.

## II. Notice and Right to be Heard

In *Globe Newspaper Co.,* 457 U.S. at 609 n. 25, 102 S.Ct. 2613, the Supreme Court declared that before a judge closes a courtroom, representatives of the press and public must be given an opportunity to be heard on the question of their exclusion. The Eighth Circuit has held the same. In *In re Iowa Freedom of Information Council,* 724 F.2d 658 (8th Cir.1983), the trial judge closed a contempt hearing and refused to hear a newspaper reporter's objections to the closure. The Eighth Circuit ruled the issue was moot because the hearing had already taken place, but nevertheless, set forth the proper procedure for closing a proceeding:

> But where a member of the media or the public objects to a request by a party that a hearing be closed, or to a proposal by the court on its own motion that a hearing be closed, the court must give

him or her a reasonable opportunity to state the objection. *Id.* at 661.

■ Implicit in the public's right to be heard is the right to immediate notice of the proposed closure. That is, the trial judge must take the bench and inform the public then present in the courtroom that he or she is going to close the courtroom to the public and allow objection. The public cannot object if it is unaware of the impending closure. Without immediate notice to the public in the courtroom, the right to object to a proposed closure is thwarted.

From the record before us, it is clear that the public then present in the courtroom, including reporter Tim Bryant, was not afforded immediate notice of the motion to close the hearing nor an opportunity to be heard. The great weight of authority requires the judge to announce in open court the court's intention to close the hearing and allow the public then present in the courtroom a chance to object.

■ In contrast, it is equally clear from the record that Relator Virginia Thurman and her private attorney received immediate notice of the closure and were provided ample opportunity to object to Judge Autrey in his chambers. Therefore, we affirm Respondent's actions with respect to Relator Virginia Thurman and her attorney.

■ This immediate notice to those present is to be distinguished from advance notice to the public and press outside those people actually attending the proceeding. While the Supreme Court has not held that the public has a right to advance notice of the closure hearing along with an opportunity to object, several circuits have so ruled. See *In re Charlotte Observer*, 882 F.2d 850, 853 (4th Cir.1989) ("requiring district courts considering closure of proceedings to give interested parties prior notice and an opportunity to be heard before deciding the issue."); *United States v. Preate*, 91 F.3d 10, 12 (3rd Cir. 1996) (holding "[o]ur earlier cases ... have

stressed that pretrial or trial motions for closure be docketed in order to allow interested members of the public to protest such closure."); *In re The Herald Co.*, 734 F.2d 93, 102 (2nd Cir.1984) (holding that motions for closure should be docketed in the public docket files to provide advance notice to the public).

In *In re Application of Herald Co.*, the trial judge ordered the courtroom closed during a pretrial motion to suppress. The Second Circuit reversed the district court, noting that advance notice to the public was necessary before closure:

> Since by its nature the right of public access is shared broadly by those not parties to the litigation, vindication of that right requires some meaningful opportunity for protest by persons other than the initial litigants, some or all of whom may prefer closure. Moreover, it seems entirely inadequate to leave the vindication of a First Amendment right to the fortuitous presence in the courtroom of a public spirited citizen willing to complain about closure. Some form of public notice should be given, since it is important, perhaps especially so, to afford an opportunity to challenge courtroom closure accomplished in the absence of spectators. The fact that no member of the public was sufficiently interested to attend a particular court session does not mean that there is lacking a significant public interest in later seeking access to the transcript of a closed hearing or testing on appeal the validity of a closure order. At the same time, we recognize that notice requirements must remain sufficiently flexible to accommodate the exigencies of the litigation process and avoid unwarranted delays.... We agree with the Third Circuit that a motion for courtroom closure should be docketed in the public docket files maintained in the court clerk's office. *Id.* at 102.

Respondent argues that the Eighth Circuit in *Webster Groves School District v. Pulitzer Publishing Co.*, 898 F.2d 1371 (8

th Cir.1990), has ruled that no advance notice of a closure hearing is necessary. In *Webster Groves,* Pulitzer sought to open the proceedings in a civil lawsuit between the school district and a handicapped student. Pulitzer complained that the District Court's closure of the proceeding was improper because the court gave no advance notice to the public. The court noted that the motion for closure was made in open court and, hearing no objections from anyone, including the newspaper reporter present in the courtroom, the judge granted the motion for closure. The Eighth Circuit held that the judge acted properly, stating that "[t]o provide an opportunity for objection by members of the public not then present in the courtroom, [the trial judge] *sua sponte* would have had to order a continuance and concoct some provision for public notice. We reject the notion that trial courts have any such duty." *Id.* at 1376.

*Webster Groves* is distinguishable from our case for several reasons. The case at bar involves a criminal proceeding, in which the right to access has historically been much greater. In *In re Iowa Freedom of Information Council,* the Eighth Circuit acknowledged this and commented: "Arguably, the public interest in securing the integrity of the fact-finding process is greater in the criminal context than in the civil context, since condemnation of the state is involved in the former but not the latter. . . ." *In re Iowa Freedom of Information Council,* 724 F.2d at 661. Additionally, in *Webster Groves,* the motion for closure was made and ruled upon in open court with no objection from those present in the courtroom. Here, the trial judge made the decision to close the hearing in his chambers without allowing members of the courtroom public to object. The public was cleared from the courtroom by sheriff's deputies before the judge took the bench, thus the public had no opportunity to voice objections to the judge.[2]

Whether or not a trial judge has to provide advance notice of closure in a criminal proceeding has yet to be decided by the Eighth Circuit. Nonetheless, we agree with that Court's comment, which applies to this criminal proceeding with force, that a trial judge should not have to "concoct" a provision for public notice. No such elaborate system need be developed. Advance notice could be provided by simply docketing the motion to close a proceeding on the public docket if there were no exigent circumstances that would justify a trial court's express waiver of advance notice.

There is no suggestion in the record that the motion to close this hearing could not have been docketed to give members of the public, including Reporter Tim Bryant, advance notice and allow them to voice their objections to the trial judge in open court before the hearing was closed. This closure motion was not occasioned by unforeseeable security concerns, or other articulable reasons warranting a finding that prior notice was impractical. The Supreme Court has consistently ruled that the public should be allowed to be heard on the issue of closure. The right of public access is of little value when the public does not know of the proposed closing until minutes or even seconds before the courtroom is cleared.

We do not conclude that every courtroom closure must be preceded by docketing the motion because there may be cases where docketing would be impractical. As the Second Circuit noted in *In re Application of Herald Co.,* notice requirements must remain flexible to accommodate the unpredictable nature of criminal litigation. Advance notice to the public via the public docket should only be required when the particular facts of the case make it possible. It seems clear, even from our attenu-

---

2. There is a factual dispute as to whether Tim Bryant objected to Sheriff's Deputies as they removed him from the courtroom. This dispute is of no significance to our holding as it is undisputed that Bryant was not afforded an opportunity to object directly to the trial judge.

ated record, that the defendant prepared substantial quantities of sensitive data and testimony of which the State was aware. From this, we infer that the Motion for Closure was not driven by exigent circumstances, but by the need to obtain a fair trial for the defendant—the court's primary obligation. Here, there is no claim of exigent circumstances, which alone could establish grounds to forego docketing the motion for closure. Therefore, we see no reason why the motion for closure could not have been docketed in this case.

### III. Substantial Probability of Prejudice

■ Regardless of the quality of public notice, in order to close a courtroom, the Supreme Court has repeatedly held that the trial judge must make specific findings on the record that a substantial probability of prejudice to the defendant will occur if the proceedings are not closed to the public and nothing short of closure will avoid that prejudice. In *Press–Enterprise Co. v. Superior Court of California I*, that Court stated:

> [T]he proceedings cannot be closed unless specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." ... If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. *Press–Enterprise Co. I*, 106 S.Ct. at 2744.

Respondent candidly acknowledges in his answer that there were no specific findings of a substantial probability that defendant's right to a fair trial would be prejudiced.

We recognize the difficult balance that Respondent must strike between the public's right of access and Defendant's right to a fair trial. In effecting that balance, the trial court must analyze the character of the proceeding for which closure is sought. We think it important to note the dilemma often associated with a change of venue hearing. Generally, a defendant seeks a change of venue because he thinks he cannot draw a fair and impartial jury from a particular venue. The Defendant's evidence at the hearing, by definition, is directed at the populace in that venue. Evidence sufficient to sustain such a motion may also make it more difficult to empanel an impartial jury if the motion is denied. Though collateral to defendant's guilt or innocence, this evidence, if made public, could prejudice defendant's assertion of his right to a fair trial. This conundrum may effectively chill the filing of such a motion—a result we cannot condone.

Respondent is justifiably concerned with the effect of the public release of potentially inflammatory evidence on Defendant's right to a fair trial. The Second Circuit addressed just such a concern in *In re Application of Herald Co.* There, the trial judge closed a hearing on a motion to suppress evidence in order to avoid releasing information that could taint future proceedings. The court remanded the case, suggesting that the trial judge should have the hearing in public and keep the prejudicial information on a sealed record:

> The closure should be tailored to the circumstances of the perceived risk. For example, if the risk arises from the content of a document, such as a defendant's statement, only that document should be withheld from public scrutiny, as long as the hearing can be conducted without divulging its content. The trial judge must articulate the basis for any closure order, supplying sufficient basis for appellate review. If such articulation would itself reveal information entitled to remain confidential, the basis for closure may be set forth in a sealed portion of the record. *In re Application of Herald Co.*, 734 F.2d at 100.

Respondent is faced with a similar problem in this case. Should Respondent decide that Defendant will be substantially prejudiced by certain proposed evidence, the court should consider, prior to ordering closure, whether the prejudice can be avoided by a viable alternative to closure. Specifically, the court should consider conducting the hearing in public with that evidence entered under seal and reviewed by Respondent *in camera.*[3] Respondent could then, if the facts warrant, make detailed findings recounting the prejudice on a sealed record. After a jury is selected and sequestered, regardless of whether the change of venue is granted, the sealed record could then be released to the public for its review, while at the same time establishing an adequate record for appellate review. This procedure would vindicate both the public's First Amendment right of access and the Defendant's Sixth Amendment right to a fair trial. Importantly, such a procedure should possess sufficient safeguards to avoid the appearance that something significant has occurred without the benefit of public scrutiny.

For the aforementioned reasons, this writ of prohibition is made absolute. The order of closure is lifted until the motion for closure is docketed, the public is allowed to make oral objection and Respondent makes specific findings on the record, sealed if necessary, that a substantial probability exists that Defendant's fair trial rights would be prejudiced without closure and that there is no other viable alternative to closure. The Motion to Dismiss Relators' petition is denied.

CLIFFORD H. AHRENS, J., concurs.

ROBERT G. DOWD, Jr., J., concurs.

---

3. The term *in camera* means in the judge's private chambers and out of the presence of those "persons who should not be privy to the information to be disclosed." *State ex rel.* *Stecher v. Dowd,* 912 S.W.2d 462, 465 (Mo. banc 1995) *citing* Black's Law Dictionary, 760 (6 th ed.1990).