Joseph L. HEALEY, III, an
individual, Plaintiff,

v.

I–FLOW, LLC, formerly known as I–Flow Corporation; DJO, LLC; and DJO Incorporated, Defendants.

Civ. No. 09–3541 (JRT/JJK).

United States District Court,
D. Minnesota.

April 3, 2012.

Charles H. Thomson, Esq., James T. Blanch, Esq., and Richard E. Mrazik, Esq.,

Parsons Behle & Latimer; Colin P. King, Esq., Jessica A. Andrew, Esq., and Paul M. Simmons, Esq., Dewsnup, King & Olsen; and Richard A. Lockridge, Esq., and Yvonne M. Flaherty, Esq., Lockridge Grindal Nauen PLLP, for Plaintiff.

Christian M. Ryba, Esq., Mitchell P. Morinec, Esq., and Robert J. McLaughlin, Esq., Segal McCambridge Singer & Mahoney; Michael C. Lindberg, Esq., Benjamin A. Johnson, Esq., Johnson & Lindberg, PA, for Defendant I–Flow, LLC.

Bradley J. Lindeman, Esq., Bryan R. Browning, Esq., Elizabeth Snyder Poeschl, Esq., and Jon R. Russell, Esq., Meagher & Geer, PLLP, for Defendants DJO, LLC and DJO Incorporated.

### ORDER

JEFFREY J. Keyes, United States Magistrate Judge.

This matter is before the Court on Defendant I–Flow, LLC's ("I–Flow") request to keep sealed and redact portions of certain exhibits previously filed under seal in connection with Plaintiff's Motion for Leave to Amend his Complaint to Assert a Claim for Punitive Damages. (Doc. Nos. 81, 85.) Based on all the files, records, and proceedings herein, the Court grants in part and denies in part I–Flow's request.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant I–Flow's request to keep sealed or redact portions of certain exhibits previously filed under seal in connection with Plaintiff's Motion for Leave to Amend his Complaint to Assert a Claim for Punitive Damages (Doc. Nos. 81, 85), is **GRANTED IN PART and DENIED IN PART** as follows:

a. The Court orders that the punitive damages briefs be unsealed;

b. The Court orders that the five supporting documents identified below as Exs. 3, 4, 5, 6, and 8 be unsealed;

c. The Court orders that the supporting document identified below as Ex. C remain sealed in its entirety;

d. The Court orders that the supporting document identified below as Ex. E be redacted as proposed by I–Flow in its letter submission to the Court;

e. Consistent with this Order, the Court directs the parties to electronically file the punitive damages briefs and supporting documents that the Court is unsealing within 10 days of this Order; and

2. The attached Memorandum is incorporated herein by reference.

## MEMORANDUM

### I. Background

I–Flow manufactures Pain Buster® pain pumps, which are "medical device[s] intended to deliver, via catheter, a continuous dose of pain medication directly into the operative site immediately following shoulder surgery." (Doc. No. 1, Compl. ¶ 8.) DJO, LLC is a pain pump distributor, and DJO Incorporated is a holding company of DJO, LLC (collectively, "DJO"). In May 1998, I–Flow and DJO, LLC entered into a "Distribution Agreement," which allows DJO, LLC to purchase and distribute I–Flow pain pumps. Pursuant to the Distribution Agreement, I–Flow was responsible for obtaining all regulatory clearances, including those with the FDA, for the pain pumps distributed by DJO, LLC.

Plaintiff had shoulder surgeries on October 1, 2002, and May 18, 2004, and he alleges in this lawsuit that his doctors implanted I–Flow manufactured Pain Buster® pain pumps in his shoulder joint following the surgeries. He alleges that as a result of the use of the continuous infusion pump, he has now developed a condition known as PAGCL or chondrolysis. In this lawsuit, Plaintiff has asserted claims for negligence and civil conspiracy between I–Flow and DJO.

On October 12, 2010, the Court entered a Protective Order in this case, which in relevant part states as follows:

Documents or other discovery material may be designated as **"Confidential"** or **"Trade Secret"** only to the extent that it consists of or includes trade secret or confidential research, development, competitive, proprietary or commercial information, which may include financial information, information relating to ownership or control of any non-public company, any information required by law to be maintained in confidence by any person, any information protected from disclosure by government regulations, and any information protected from disclosure by privacy law, as well as any other type of information given confidential status by the court.

(Doc. No. 40, 10/12/10 Protective Order ¶ 4.) The Protective Order further provides:

All Confidential Discovery Material will be filed under seal, including any portion of a court paper that discloses Confidential Discovery Material, with notice of such filing served upon the producing party. The Confidential Discovery Material shall be kept under seal until further order of the Court. The parties agree that use of this process will be narrow in scope to ensure that the only information withheld from public inspection is information expressly authorized by law.

. . .

The court retains discretion to deny confidential treatment to any documents or discovery material submitted in connection with any motion, application, proceeding or paper that may result in an order or decision by the court.

(*Id.* ¶ 14, 16.)

Plaintiff has filed a motion for leave to amend his Complaint to assert a claim for punitive damages, and Defendants have opposed that motion. All parties have submitted their briefs and several supporting documents under seal, pursuant to the Protective Order. At the hearing on the motion, the Court instructed the parties that it would be unsealing all documents filed under seal in connection with the motion unless a party could show good cause for keeping the document under seal. On December 16, 2011, I–Flow submitted a letter stating its position on why certain portions of six exhibits in the sealed record should be redacted, and why one exhibit should remain under seal in its entirety. (Doc. No. 81.) No other party submitted a letter to support keeping any of the briefs or exhibits under seal. On March 15, 2012, the undersigned issued an Order

asking I–Flow to supplement its letter to inform the Court as to whether any of the seven exhibits at issue had been made public in any other proceedings in similar cases pending around the country. (Doc. No. 84.) On March 23, 2012, I–Flow filed its supplemental letter providing the information requested. (Doc. No. 85.)

## II. Discussion

 Federal Rule of Civil Procedure 26 anticipates that, in certain cases, discovery of trade secrets or other confidential information may be sealed. That Rule provides, in part, that a court "may, for good cause, issue [a protective] order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R.Civ.P. 26(c)(1). "Whether trade secrets are involved or not, and whether their revelation will cause damage to someone, are questions of fact, to be decided [by the court] after receiving evidence." *In re Iowa Freedom of Info. Council,* 724 F.2d 658, 663 (8th Cir.1983). Courts should not simply take representations of interested counsel on faith, but should instead conduct a limited *in camera* review of documents alleged to contain trade secrets and other proprietary information. *Id.* at 662–63.

 In doing so, courts are reminded that there is a common-law right of access to judicial records. *See Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.,* 898 F.2d 1371, 1376 (8th Cir.1990); *see also Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (footnotes omitted). The Eighth Circuit has described the right to public records as presumptively attaching absent "compelling reasons [to] justify nondisclosure." *In re Neal,* 461 F.3d 1048, 1053 (8th Cir.2006). The Eighth Circuit has also instructed that this right of access "is not absolute, but requires a weighing of compet-

ing interests." *Webster Groves Sch. Dist.,* 898 F.2d at 1376. A court has supervisory power over its own records, and the decision to seal a file is within the court's discretion. *Id.*

The Court finds that I–Flow has a heightened burden to overcome the presumptive right of the public access to the briefs and supporting documents at issue because the documents in issue were filed with the Court in connection with a merits-based motion; the parties submitted these documents to the Court to support their respective positions on the merits of whether punitive damages may be sought in the case. *See Grove Fresh Distribs., Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 898 (7th Cir.1994) (stating that the common law right of access applies to all "judicial decisions and the documents which comprise the bases of those decisions"); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 164 (3d Cir.1993) (stating that the common law right of access applies to materials accompanying all "pretrial motions of a nondiscovery nature").

 The very nature of this motion highlights that the public has a strong interest in access to these materials because the health and safety of the public is at issue. Whether or not leave to assert punitive damages is allowed, keeping secret the evidence that Plaintiff claims constitutes clear and convincing proof of deliberate disregard of the rights and safety of others conflicts with one of the primary goals of the punitive damages remedy—to deter wrongdoers from injuring the health and safety of the public. In addition, broad public access to judicial decision-making advances important societal interests including the promotion of public confidence in the courts, enhancement of the quality of justice by enabling the public to monitor and evaluate judicial decisions, education of the public about the working of the courts, and the creation of "opportunities for participation in the system that would otherwise pass unknown to many members of the public." *Mokhiber v. Davis,* 537 A.2d 1100, 1110 (D.C.App.1988). As Justice Holmes explained:

It is desirable that the trial of causes should take place under the public eye, not

because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed. *Cowley v. Pulsifer,* 137 Mass. 392, 394 (1884). Secreting evidence that underlies a judge's decision conflicts with these important goals. For one thing, it could require the court to circumscribe its opinion explaining the decision so that secrets are not revealed or, worse still, result in a blacked-out redacted opinion that looks like it came from a top secret spy agency file. And it could keep from the public not only the submitted evidence that the court relies on to make its decision, but also the evidence that the court does not use in making its decision; sometimes the fact that a court has not taken into account certain information filed with the court can be very important in evaluating the merits of a court's decision because that evidence should have made a difference in the court's decision.

■ Here, the Protective Order extended broad protection to all documents produced and designated confidential by both parties during discovery. Because the parties did not object to each other's confidential designations, they had not, up until this point, been required to make a showing of good cause for any individual document's confidentiality. Thus, the Court must review the documents that I–Flow seeks for good cause under Fed.R.Civ.P. 26 to remain confidential, and must weigh the competing interests regarding the common-law right of access to judicial records. In order to overcome the presumptive right to public records, the party seeking to seal information because it is allegedly trade secret or proprietary commercial information must show compelling reasons to keep the information secret—i.e., that it is likely that public disclosure of the information will harm the party. *See In re Neal,* 461 F.3d at 1053 (describing the right to public records as presumptively attaching absent "compelling reasons [to] justify nondisclosure"); *see also In re Cendant Corp.,* 260 F.3d 183, 196 (3d Cir.2001) ("[C]ontinued

sealing must be based on current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm [they] claim[ ]." ) (emphasis omitted) (citing *Leucadia,* 998 F.2d at 167); *Pichler v. UNITE,* 238 F.R.D. 405, 408 (E.D.Pa.2006) ("[The party seeking secrecy] cannot satisfy its burden with '[b]road allegations of harm, bereft of specific examples or articulated reasoning.' ... Instead, it must show with 'specificity' that the portion of the record it seeks to keep from the public contains the type of information courts protect and that its 'disclosure will work a clearly defined and serious injury to [it]' ") (quoting *In re Cendant Corp.,* 260 F.3d at 194); *Contratto v. Ethicon, Inc.,* 227 F.R.D. 304, 309–12 (N.D.Cal.2005) (rejecting defendants' confidentiality designations for materials, including communications with the FDA, because defendants failed to identify any "specific secret or otherwise show the specific harm that will result from disclosure of each document"); *Tinman v. Blue Cross & Blue Shield of Michigan,* 176 F.Supp.2d 743, 745 (E.D.Mich.2001) ("[C]ourts traditionally require that the party wishing to have confidential information in the court record kept under seal show that disclosure of the information will result in some sort of serious competitive or financial harm.").

■ The Court has carefully reviewed *in camera* all seven documents that I–Flow contends should either remain sealed or be redacted in some fashion because they involve the disclosure of trade secrets and related confidential information regarding product design, materials, potential uses of the product, and strategies for product development and marketing, or are otherwise confidential. The Court concludes that Defendants have not sustained the burden of showing the Court that the following documents or testimony contain trade secrets or other proprietary information, the disclosure of which would likely cause harm. These items should not remain sealed, nor should they be redacted as I–Flow has proposed:

- Ex. 3: 10/29/98 fax with attachments from Robert Bard to Irene Naveau [IFLOWP00030547–30562];

216

- Ex. 4: 3/18/09 deposition of Robert Bard;
- Ex. 5: 11/4/98 fax with attachment from Robert Bard to Irene Naveau at the FDA [IFLOWP00030563–30578];
- Ex. 6: 11/11/98 fax with attachments from Robert Bard to Irene Naveau at the FDA [IFLOWP00030588–30613]; and
- Ex. 8: 7/29/11 deposition of Shane Noehre.

In addition, the Court orders that the punitive damages briefs (both the moving memoranda and the opposition) be unsealed in their entirety.

■ The Court concludes, however, that the following documents do contain proprietary information, the disclosure of which likely would harm I–Flow or DJO.

- Ex. C: 5/12/99 Distribution Agreement and Amendments thereto [DJO 0017–DJO 0048]; and
- Ex. E: 10/29/99 letter from I–Flow's attorneys to DJO's attorneys [IFLOW0022315–IFLOW0022321].

After weighing Plaintiff's and the public's need for disclosure against the potential harm that unsealing may cause I–Flow, at this time the first document should remain sealed in its entirety, and the second document should be filed in redacted form. Specifically, these documents have not previously been made public; I–Flow objects to their disclosure; I–Flow makes a compelling argument as to the proprietary interests involved; I–Flow has shown that there would potentially be harm to I–Flow from disclosure of the sensitive information to competitors relating to I–Flow's minimum purchase requirements, royalty payments, and price terms in its distribution agreements; there is little need for public access to the information at issue; and these documents were submitted to the Court by Defendants for the limited purpose of opposing a motion in which the Court was only to review Plaintiff's evidence and was not to weigh any of Defendants' evidence and the Court will not consider these documents in its ruling on the motion. *See Schedin v. Ortho–McNeil–Janssen Pharms., Inc.*, No. 08–5743, 2011 WL 1831597, at *2–*4 (D.Minn. May 12, 2011) (applying the six factor test first articulated in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C.Cir. 1980)); *see also Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 870 F.Supp. 1499, 1502–03 (D.Minn.1994) (stating that evidence submitted in opposition to a motion for leave to assert punitive damages is not considered).