OPINION
Plaintiff-Appellant, Roger T. Phillips, brings this administrative appeal from a judgment of the Court of Common Pleas of Wyandot County, affirming the decision of the Village of Carey to uphold Appellant's termination from the police department. For the reasons set forth below, we affirm.
The following facts are relevant to this appeal:
 Appellant began working for the Carey Police Department as a patrol officer in 1990. In May 1998, he was promoted to sergeant. Less than a year later, in January 1999, a captain's position became available in the department. Appellant learned of the opening while on duty on January 17th. Because he was under the impression that the job was going to be filled by the Village Council at a meeting scheduled for the next evening, Appellant immediately contacted his wife and instructed her to begin drafting his resume.
Appellant assisted his wife in the project once he returned home from work the following morning. On the evening of January 18th, prior to the commencement of the council meeting, Appellant submitted the completed resume to Carey Chief of Police, Dennis Yingling. Shortly after the meeting, Appellant was informed that he would be interviewed for the position the following week.
Meanwhile, because Chief Yingling was familiar with Appellant's high school and the fact that the graduating classes are generally large, he decided to call the school to verify the surprisingly high grade point average and class rank reported on Appellant's resume. Chief Yingling contacted Sandra Weininger, a secretary at Columbian Tiffin High School, and asked for verification of the information. At no time did Chief Yingling state that he wanted a full transcript. Weininger asked the chief to send a written request, and upon receiving such authorization, Ms. Weininger forwarded a copy of Appellant's high school transcript. Contrary to the information contained on his resume, the transcript revealed that Appellant graduated with a 2.48 grade point average, and his class rank ranged from the 28th to the 47th percentile.
Chief Yingling informed Mayor Dallas Risner and Village Law Director, Robert Maison, of the discrepancy between the resume and the transcript. During the January 27, 1999 interview with the village council's hiring committee, Maison asked Appellant if the resume was accurate to the best of his knowledge. Appellant stated that he was certain his resume was correct because he received "mostly A's" in high school. In fact, the transcript revealed that Appellant received only one A during his high school career, and it was in a physical education class.
Two days later, Appellant received a notice of suspension from Chief Yingling. During a meeting with the chief, Appellant again stated that he stood by the information on the resume. Thereafter, on February 1, 1999, Mayor Risner met with Appellant. After being confronted with the discrepancy, Appellant began explaining that even though the resume did not specify it as such, the grade point average and class rank were linked to his agricultural-vocational classes only, and related to his performance on tests rather than homework assignments. The mayor apparently did not find Appellant's explanation credible, and Appellant received a letter of termination the next day.
Appellant perfected a timely appeal to the village council at a meeting held on February 15, 1999. The council voted four to two to uphold the mayor's decision to terminate Appellant's employment. Appellant then appealed the council's decision to the Court of Common Pleas of Wyandot County pursuant to R.C.737.19(B). Following a trial de novo, the court found that because the evidence demonstrated that Appellant violated the truthfulness provisions of the department's Standard Operating Procedures Manual and Employee Manual, the termination was based upon good cause. Accordingly, the court affirmed the action taken by the village council. On appeal to this court, Appellant asserts the following assignments of error:
Assignment of Error I
 The trial court committed prejudicial error by finding that Appellant's high school transcript was legally obtained by Chief Yingling from Columbian Tiffin High School.
 We must point out that Appellant advances several sub-arguments under this first assignment of error, each reiterating the general allegation that Appellant's high school transcript was obtained and utilized in an illegal fashion. For the following reasons, Appellant's arguments are not well-taken.
We begin our discussion with Appellant's contention that by obtaining the transcript, the village violated his state and federal statutory rights. With regard to the state statute, Appellant relies upon the following subsection of R.C. 3319.321:
 (B) No person shall release, or permit access to, personally identifiable information other than directory information concerning any student attending a public school * * * without the written consent of the parent, guardian, or custodian of each such student who is less than eighteen years of age, or without the written consent of each such student who is eighteen years of age or older. [Emphasis added.]
 Contrary to Appellant's assertions, we find that the plain language of this statute clearly indicates that the law was designed to protect students who are currently attending a public high school rather than persons who are no longer attending the institution. Thus, this law has no application to the matter at hand.
Likewise, we find the federal statute cited by Appellant to be inapplicable to this case. Although Appellant contends that the transcript was obtained in contravention of the Family Educational Privacy Rights Act, (FERPA), codified in 20 U.S.C. § 1232g, we observe that relevant case law indicates that the statute does not create a private cause of action. For example, in Tarka v. Franklin (C.A. 5 1989), 891 F.2d 102, 104, the Fifth Circuit Court of Appeals held that because the only remedy expressly provided in the act is that a school may lose federal funding if it unlawfully releases students' records, a private cause of action does not exist. See, also, Hartfield v.East Grand Rapids Pub. Sch. (W.D.Mich. 1997), 960 F. Supp. 1259, 1264
(stating that although a private cause of action does not exist, a FERPA violation could be used as the basis for an action under42 U.S.C. § 1983.)
Appellant's argument that the action of the village violated his constitutional right of privacy is also unpersuasive. We first turn our attention to the question of whether a constitutional violation of this type occurred when Chief Yingling used Appellant's Social Security Number (SSN) in the written request for verification of his class rank and grades.
"The right of privacy involves the interest of avoiding disclosure of personal matters and independence in making certain kinds of important decisions." State ex rel. The Plain DealerPublishing Co. v. Cleveland (1996), 75 Ohio St.3d 31, 34. An analysis of a privacy right involves an initial determination as to whether the individual has a legitimate expectation of privacy in the information sought to be disclosed, and then whether the privacy interest outweighs the interest benefited by disclosure.State ex rel. Beacon Journal Publishing Co. v. Akron (1994),70 Ohio St.3d 605, 608.
In Beacon, the Supreme Court of Ohio held that the federal constitutional right of privacy forbid the disclosure of Social Security Numbers under R.C. 149.43. Under the circumstances of that case, The Akron Beacon Journal sought the disclosure of payroll files on approximately two thousand five hundred city employees. Although the city provided copies of the records, which included such information as employee names, addresses, telephone numbers, birth dates, and pay rates, the city redacted the information regarding the employees' Social Security Numbers.
In deciding whether the newspaper was entitled to disclosure of the Social Security Numbers through a writ of mandamus, the Court found that the Privacy Act of 1974 created a legitimate expectation of privacy "in the minds of city employees concerning the use and disclosure of their SSNs." Id. at 609. By then weighing the interests benefited by disclosure against this privacy interest, the court concluded that the "high potential for fraud and victimization caused by the unchecked release of city employees' SSNs outweighs the minimal information about governmental process gained through the release of the SSNs." Id.
at 612. Thus, in this situation, the Court forbid the release of the Social Security Numbers.
We find this case readily distinguishable. It is true that Chief Yingling included Appellant's Social Security Number on the written request for verification of his class rank and grades. However, unlike the Beacon case, it was certainly not an "unchecked release" of the information to a division of the media like a newspaper. Rather, Appellant's Social Security Number was provided only to the secretary of Columbian Tiffin High School, who, in fact, testified that the information was unnecessary for the release of the transcript. Since there does not appear to be the same "high potential for victimization", we find that this exceptionally narrow disclosure of Appellant's Social Security Number did not violate his constitutional right of privacy.
With that stated, we will address Appellant's contention that the disclosure of the transcript to various city officials violated his constitutional right of privacy because the document contained certain personal information such as the names of Appellant's mother and father. As we have already explained, the Supreme Court of Ohio found an expectation of privacy in Social Security Numbers based upon the federal legislative scheme involving the use of such information. Beacon,71 Ohio St.3d at 609. There is no similar legislative scheme protecting the disclosure of this type of information in this specific context. Additionally, there is no evidence of any risk of harm related to the mere disclosure of the names of Appellant's parents. Therefore, Appellant's assertion that the constitutional right of privacy should prevent the disclosure of this information alone is without merit.
Because Appellant has failed to assert any state or federal protection from disclosure of the information under these circumstances, we need not pass on the remaining arguments that the police department obtained the information without proper authorization, and that the chief somehow unlawfully induced Sandra Weininger to release the transcript. We are compelled, however, to address one final Constitutional argument that Appellant appears to make.
The appellate brief submitted to this court states that "[i]t is hornbook constitutional law that even murderers cannot be convicted solely through the use of evidence that is collected in a manner that violates the constitution." Obviously, Appellant is asserting that if the transcript was obtained in violation of his constitutional rights, the evidence should have been excluded from trial. In response to this argument, we point out that even if the transcript had been obtained unlawfully, the "exclusionary rule", regularly used as a remedy for violations against the right to be free from unreasonable searches and seizures, cannot form the basis of a viable argument herein since it is generally not applied in civil cases. See, e.g., State ex rel. Rear DoorBookstore v. Tenth Dist. Court of Appeals (1992), 63 Ohio St.3d 354,364.
For all of the foregoing reasons, Appellant's first assignment of error is overruled.
 Assignment of Error II The trial court committed prejudicial error by finding that Appellant was terminated by the Village of Carey with good cause.
 The Employee Manual for the Village of Carey states the following:
 Occurrences of any of the following violations, because of their seriousness, may result in immediate dismissal without warning:
 Dishonesty; willful falsification or misrepresentation on your application for employment or other work records; * * *.
 In addition to the Employee Manual, the police department also utilizes a Standard Operating Procedures Manual. Section 3.02 of the manual, entitled "Truthfulness", provides that "[m]embers shall speak the truth at all times. Reports and written communications from any member shall also reflect the truth."
Appellant testified that he was aware that making a false statement could lead to his termination from the police department. Notwithstanding, Appellant also testified that he did not know his grade point average or class rank at the time that he drafted the resume. Nor did he contact the school to obtain the correct information during the days between the submission of the resume and the interview with the hiring committee. He stated that he remembered receiving "mostly As" during high school, however, the transcript demonstrates that Appellant was given only one "A" for his performance in a freshman physical education class.
While Appellant initially stated that he stood behind the information on the resume, he then began to alter his position once being confronted with the official transcript. Appellant then attempted to explain the discrepancy between the resume and the transcript by suggesting that the resume was correct, but that his representation was intended only to reflect his test grades in his agricultural-vocational classes, rather than his overall performance in each of his high school classes. The resume, however, does not contain any language to alert a potential employer to this peculiar qualification.
Based upon the foregoing, we are convinced that the trial court did not err in finding that Appellant was terminated from the police department for good cause. Accordingly, Appellant's second assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
SHAW and BRYANT, JJ., concur.